JOE MUNN v. STATE OF FLORIDA

30 So. (2nd) 501
May 16, 1947
Rehearing denied June 4, 1947

January Term, 1947
Special Division B.

G. A. *Worley* and *Jack Kehoe,* for appellant.

J. *Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, and *Robert R. Taylor,* for appellee.

BUFORD, J.:

This appeal brings for review judgment of conviction of the offense denounced by section .782.12 Fla. Statutes 1941 (same F.S.A.), which reads as follows:

"Killing by Mischievous Animal.—If the owner of a mischievous animal, knowing its propensities, shall willfully suffer it to go at large, or shall keep it without ordinary care and such animal while so at large or not confined kills any human being, who shall have taken all the precautions which the circumstances may permit to avoid such animal, such owner shall be deemed guilty of manslaughter."

The record shows that the appellant Munn was at the time of the acts involved in this case, and had been .for many years before that time, engaged in the breeding and raising of what is commonly known as pit bull dogs which were known to be vicious, powerful and dangerous animals.

The record shows that Munn's bull dogs, either those involved in this particular. incident or others of like breed and character, had viciously attacked numerous people prior to this occasion; that at the time of this incident Munn had placed his dogs in an enclosure some 100 feet wide and 200 feet long, but which enclosure was insecure and unsafe and from which the dogs could go almost at will; that on the day of this incident eight or more of the dogs were out of the enclosure and running at large; that within two hours prior to the attack and killing of Mrs. Zinke they had attacked a man and boy on horse-back from which attack they (the dogs) were beaten off after they had bitten the horses and endeavored to reach the riders.

The record shows that Mrs. Zinke was attacked some considerable distance from the make-shift of a pen in which the dogs were supposed to be kept and that she managed in some way to cover some little distance in retreat where she was

pulled down by the dogs, stripped of all her clothing except her shoes, her scalp torn off and her body severely mutilated, from which wounds, soon after, she died.

Appellant poses five questions postulated on his assignments of error for our consideration.

The first stated question is:

"In the trial of one for manslaughter because of the death of a human being resulting from an attack by mischievous animals, is it necessary for the State to prove that the deceased took all precautions which the circumstances did permit to avoid such animals?"

The gravamen of the offense condemned by the statute is the negligence or lack of ordinary care exercised by one who is the owner of mischievous animals which negligence or lack of ordinary care results in such animals being suffered or permitted to go at large and thereby placing members of the public in danger of death or great bodily harm. So, the gist of the offense is negligence.

The language of the statute "who shall have taken all the precautions which the circumstances may permit to avoid the animal" may be treated as surplusage because the inclusion of these words adds nothing to, nor takes anything from the statute which would not have obtained had the words not been included in the statute. This is true because it appears to be well settled in this jurisdiction that the law presumes, in the absence of contrary evidence, that one injured by another's negligence did everything a reasonably prudent man would have done under the circumstances to protect his own safety. See Murden v. Miami Poultry etc., Co., 113 Fla. 870, 152 So. 714; White v. Hughes, 139 Fla. 54, 190 So. 446 and cases there cited.

It appears to us that the only purpose for the inclusion of this language in the statute was to make it clear that the presumption of the exercise of due care by the person killed could be rebutted by a showing that the presumed due care was not in fact exercised.

But, aside from this, the circumstantial evidence which is uncontradicted and conclusive in its nature, shows that Mrs. Zinke being unarmed and unprotected, was attacked by the

dogs, some eight or more, and that she was unable by any means within her power to exercise any precaution which would or could extricate her from the assault of these vicious animals.

We are unable to imagine any reasonable thing which she might have done which would have extricated her from this attack and we must assume that the defendant and counsel have been unable to conjure up any mental picture of anything which Mrs. Zinke might have done to avoid being killed by the dogs because they have suggested no reasonable available action on her part which could have resulted in obviating the result of the attack.

The record shows that she was where she had a lawful right to be and the dogs were not where it was the owner's duty to keep them.

The second question is as follows:

"In the trial of one for manslaughter because of the death of a human being resulting from an attack by mischievous animals, is it error for the court, over the objections of the defendant, to permit in evidence testimony of witnesses concerning attacks made upon them several years prior to the homicide and by animals other than those involved in the homicide?"

It is true that some of the attacks made by Munn's dogs on other persons prior to the incident here involved were made by other dogs than those involved in this incident. But, those attacks were made by dogs of like breed and character as the dogs involved here and were dogs which had been bred and were owned by Munn. So we hold that the evidence in regard to such attacks was admissible for the purpose of showing the knowledge and attitude of Munn in keeping the dogs in such insecure manner that it was possible and probable that they could and would escape from the enclosure and attack people with whom they came in contact.

The third question challenges the action of the court in refusing to give a certain charge requested by the defendant. We find from the record that the principles enumerated in the requested charge had been covered by a charge theretofore given by the court to the jury.

The fourth question challenges the action of the court in refusing to give a certain charge requested by the defendant. This charge was properly refused because it did not state correct enunciations of law as applied to the evidence in this case.

The fifth question challenges the action of the court in denying motion for new trial upon the ground of newly discovered evidence.

We have read and considered the affidavits in support of this ground of the motion for new trial and we find that there was no abuse of judicial discretion in denying the motion.

For the reasons stated, and no reversible error being disclosed by the record, the judgment is affirmed.

It is so ordered.

THOMAS, C. J., ADAMS, J. and KANNER, Associate Justice, concur.