SCHWARTZ, ALAN R., Associate Judge.
“White collar crimes” are notoriously hard to prove. White collar thieves often concoct and employ clever schemes by which they enrich themselves at the expense of their employers or of members of the public. Very often, they themselves maintain control over books and records which might, if honestly kept, reveal their crimes. Very seldom are such crimes committed on the courthouse steps, with eyewitnesses and physical evidence — • in a word, “direct” evidence — readily available. Thus, circumstantial evidence, with the attendant difficulties of proof which our law has rightly imposed upon its use, is almost invariably required to establish guilt. In the case before us, the defendant-appellant primarily contends that the circumstantial evidence that he stole from his employer, which formed the basis of his conviction of seven counts of grand larceny, was legally insufficient to support the jury verdict against him. We hold that the record of circumstantial evidence in this case overwhelmingly — and to the exclusion of any other reasonable inference — establishes the guilt of the defendant, and accordingly affirm the verdict and judgments below.
The defendant Erie McGough had been the general manager of the Withlacoochee Electric Cooperative from its establishment in 1945 until early 1972. In that capacity, he had apparently exclusive authority to purchase all of the Co-op’s motor vehicles. McGough purchased all of these vehicles, at least 160 in all and amounting to some $498,000 in total dollar volume, without competitive bidding and from a single Ford dealership, owned successively over the years by four separate operators, in Brooksville, Florida. McGough, it will surprise no one, also “purchased” all his personal vehicles from the same agency— and therein hangs the tale. For the State charged that, in 1970 and 1971, McGough used the Co-op’s money in purchasing its vehicles to secure two personal vehicles for his own use.
The scheme through which this result was accomplished was clever only in the sense that the Co-op’s books themselves revealed no evidence that it had taken place. The records of the Ford agency, however • — owned by Bill Timmons Ford, Inc. during the critical period — demonstrated that as to at least seven of the purchases of vehicles made by McGough for the Co-op with, of course, the Co-op’s money, the agency set up a so-called “reserve” fund in varying amounts. These amounts were not deducted from the prices paid by the Coop, but in each instance were deducted from the amounts otherwise due to the agency from McGough for his own cars.[1] The record showed that the agency’s average profit on the Co-op vehicles in which the “McGough reserves” were involved far exceeded that on the other non-reserve vehicles. Thus, it was clear *149 that McGough was getting the benefit of the Co-op’s funds to the extent of the “reserves.”
The defendant insists, however, that although this evidence may have established that Timmons and McGough were involved in a kind of payola, it did not, as circumstantial evidence such as this must,[2] exclude a reasonable hypothesis that he was not guilty of larceny from the Co-op, the crime with which he was charged; that is,' that he did not know that it was the Coop’s money which was being used to supply him with inordinately inexpensive, or free, personal vehicles. If this were all the evidence,[3] despite its overwhelming suspi-ciousness, McGough might be right. But it is not, and he is not.
For a man named James Brooks, who had owned the Ford agency between 1959-1966 (he sold it to Herb Williams who, in turn, sold it to Timmons) testified that after he had purchased the agency from the prior owner, one Dawson, Mc-Gough came to Brooks to confirm that Brooks would follow the plan he and Dawson had established and followed, under which the agency deliberately inflated prices charged for Co-op vehicles, so that McGough would not have to pay at all for his own.[4] Brooks stated[5] that during his tenure the arrangement was in fact continued, with him and McGough jointly deciding the particular overcharges to the Co-op which were to be used for McGough’s benefit.
The jury in this case thus had the right to believe, and obviously did believe, the testimony of Brooks to the effect that the defendant had a specific understanding with him that monies belonging to the Cooperative which were paid by the defendant to Brooks would be “credited” to the defendant in his own subsequent purchase of personal automobiles from Brooks. In order to establish the guilt of the defendant for the offenses charged in the informations, the jury was required only to conclude — as it obviously did conclude — that McGough had knowledge of precisely the same arrangements, effected in precisely the same manner, with one of Brooks’ successors as an owner of precisely the same agency. It seems clear not only that the jury was perfectly justified in drawing this conclusion and thus in determining that McGough had simply stolen money from his employer to be used for his own benefit — virtually the hornbook definition of larceny, e.g., English v. State, 80 Fla. 70, 85 So. 150—but that no other conclusion could properly have been drawn from the facts by a jury of reasonable men. It simply strains credulity to its breaking point and beyond to suggest that the similarity of the schemes involved was merely coincidental. Assuming that the convictions here involved were, as suggested, based solely upon “circumstantial evidence,” [6] the evidence presented to and accepted by the jury was therefore more than adequate to meet the established test for determining the sufficiency of that *150 kind of evidence — that is, that it eliminate any reasonable hypothesis of innocence, e. g., Chason v. State, 148 Fla. 540, 4 So.2d 691; Williams v. State, Fla. 1962, 143 So.2d 484. A reversal would therefore amount to an utterly unjustified interference with the function of the triers of fact, the jury.
One more thing needs to be said. There is an implication in the defendant’s presentation here that he has been unfairly convicted of the kind of thing that “everyone” does. We are not so cynical, even in this day and age, to believe that this is true. But the number of people who “do it” makes no difference. Theft is theft. McGough stole from his employer just as surely as if he had put the “reserve” money directly into his pocket and bought his cars with that cash; indeed, just as surely as if he had rifled the Co-op’s safe. He was justly convicted of the crime of grand larceny with which he was charged.
Affirmed.[7]
MANN, C. J., and McNULTY, J., concur.

. In fact, it appeared that as to the two personal vehicles involved in the informations brought against McGough, the arrangement resulted in his personally paying nothing whatever — apart from his trade-in — for his cars. In one case, McGough would have otherwise owed the agency $1,378.35; co-incidently, however, on three vehicles purchased for the Oo-op within two weeks of the date of delivery, the agency set up “reserves” of exactly $459.45 each, so that McGough paid nothing. In the other, the total amount of “reserves” set up both before and after McGough “bought” his car but before he was discharged (and the Co-op stopped doing business with the agency) did not equal the amount supposedly due. Still McGough paid the agency no money at all. Apparently both were awaiting future Co-op purchases in order to get even.

. E. g., Edwards v. State, Fla.App.1969, 226 So.2d 140; Whitehead v. State, Fla.App.1973, 273 So.2d 146; Schilling v. State, Fla.App.1973, 285 So.2d 428.

. Of course, Timmons, his bookkeeper, and McGough himself, all denied any criminal arrangement between Timmons and the defendant.

. This was in line with what seemed.to be happening in the Timmons-McGough dealings. See n. 1, supra.

. The defendant’s Point II claims error in the admission of Brooks’ testimony under the rule of Williams v. State, Fla.1959, 110 So.2d 654. We can think, however, of no more appropriate case than this one for the admissibility of “prior crime” evidence for the relevant purposes of establishing knowledge and intent. The fact that these crimes occurred some years before those charged in the informations in question does not affect their admissibility. See Munn v. State, 1947, 158 Pla. 892, 30 So.2d 501; Crosby v. State, Fla.App.1970, 237 So.2d 286.

.There is some conceptual difficulty, which we need not resolve here, in determining whether Brooks’ testimony is “direct” or merely “circumstantial” evidence of Mc-Gough’s guilty knowledge and intent.

. The defendant’s final point contends that the trial judge erroneously admitted “expert” evidence that the money represented by the reserves “belonged” to the Co-op. The record shows that this testimony was admitted only to rebut several answers adduced by the defendant to the effect that it “belonged” to Timmons. There was surely no harmful error here. See also Diecidue v. State, Fla.App.1960, 119 So.2d 803.