468 So.2d 291 (1985)
Seneca B. ANDERSON and Martha P. Anderson, His Wife, Appellants,
v.
Julian WALTHAL, a/K/a Joe Walthal and J. Max Hannon, Appellees.
No. BC-319.
District Court of Appeal of Florida, First District.
March 26, 1985.
Rehearing Denied May 7, 1985.
*292 Everett P. Anderson, of Anderson & Weiss, Tallahassee, for appellants.
Eugene L. Ciotoli and Charles A. Stampelos, of McFarlain, Bobo, Sternstein, Wiley & Cassedy, P.A., Tallahassee, for appellees.
WIGGINTON, Judge.
The Andersons appeal from partial final summary judgments entered by the trial *293 court in their action seeking damages for injuries suffered by Mr. Anderson when he was bitten by a dog owned by one of Walthal's tenants. We affirm in part and reverse in part, and, for reasons later set forth, sua sponte dismiss the portion of the appeal relating to the initial summary judgment entered in favor of Hannon on the issue of liability for punitive damages.
The events leading to the present action began when the Andersons, seeking a place to store furniture, entered Walthal's industrial park to inquire about leasing a miniwarehouse. After parking, Mr. Anderson walked toward Building D, which contains both the office of manager Hannon and warehouses occupied by tenants, including Gamalero, who owned the pit bull terrier known as "Panda Girl." Upon finding Hannon's office empty, Anderson proceeded around the side of the building seeking someone of whom to inquire about renting a warehouse. Observing some men just inside of Gamalero's shop, Anderson approached the entrance. At this juncture it is disputed as to whether Anderson crossed the entrance to the leased premises or remained standing just outside in the park's paved common area. In any event, according to Anderson, as he initiated his inquiry, Panda Girl lunged forward from somewhere in the shadowy recesses of the warehouse and bit him in the groin, hurtling him backwards against an adjacent truck. Although Panda Girl had been tied to a stake, her tether had been sufficiently long to enable her to attack Anderson. No "Bad Dog" sign or other warning had been posted concerning Panda Girl's presence, which had been unknown to Anderson.
Although Gamalero maintained in his deposition that Panda Girl was not vicious, Hannon testified that she had "lunged" at him on a prior occasion. Walthal admitted that he had visited the park from time to time prior to the day when Anderson was bitten, but he apparently had no actual knowledge of Panda Girl's existence.
The Andersons sued Walthal and Hannon in a second amended complaint, seeking both compensatory and punitive damages arising from injury suffered from the dog bite. Walthal and Hannon answered and moved for partial summary judgment on the issue of punitive damages. The trial court granted the motion and the Andersons filed a third amended complaint which omitted any reference to punitive damages. Again, Walthal and Hannon answered and filed summary judgment motions arguing that there was no basis for imposing liability against either Walthal as principal/premises owner, or Hannon as agent/premises manager. The trial court found from the undisputed material facts that Walthal did not have actual knowledge of Panda Girl's existence or of her alleged vicious propensities, and that should a jury find such actual knowledge on Hannon's part, that knowledge could not be imputed to Walthal. The court accordingly granted the motion for summary judgment in favor of Walthal, and dismissed him with finality from the lawsuit. The court denied the motion as to Hannon.
Directing our attention first to a procedural issue, we note that since all judicial effort has been finally expended as to Walthal, we may on this appeal consider the partial summary judgment entered in favor of Walthal on the punitive damages issue. However, since the suit remains pending as to Hannon, the partial summary judgment entered in his favor on the count for punitive damages remains a nonappealable interlocutory order. Gause v. First Bank of Marianna, 442 So.2d 1062 (Fla. 1st DCA 1983). For that reason, we dismiss the portion of the appeal relating to the partial summary judgment in favor of Hannon on the punitive damages count.
Turning now to the merits of this appeal, we see that the Andersons challenge first the trial court's conclusion that they were required to show actual knowledge on Walthal's part of the presence and vicious propensities of Panda Girl before he could be held liable, despite Hannon's knowledge. The Andersons argue that the court failed to recognize the issue as being one clearly resolvable by pure agency principles. Applying those principles, the Andersons *294 maintain that since Walthal had elected to detach himself from the day-to-day operation of his business and had delegated that responsibility to his fully authorized agent and business manager, Hannon, he should be held vicariously liable for injury incurred by business invitees on his premises when it could be shown that Hannon had actual knowledge of a dangerous condition but failed to warn of such condition. In short, Hannon's knowledge would be imputed to Walthal.
Although Hannon agrees with that argument, Walthal maintains that the principles of premises liability and agency are irrelevant and, instead, attempts to wedge the Andersons' cause of action into the narrower confines of so-called "dog bite" case law. Walthal also argues that it is manifestly unreasonable to declare, as a matter of law, that he had a duty to protect Anderson from Gamalero's dog, of which he had no knowledge. For that proposition, he cites several cases, most notable among them being Dickson v. Graham-Jones Paper Company, 84 So.2d 309 (Fla. 1955); Christie v. Anchorage Yacht Haven, Inc., 287 So.2d 359 (Fla. 4th DCA 1973); and Uccello v. Laudenslayer, 44 Cal. App.3d 504, 118 Cal. Rptr. 741, 81 A.L.R.3d 628 (1975). Walthal finally contends that should this Court apply premises liability and agency principles in the instant case, the park area where Anderson was bitten was outside of the scope of the invitation to enter the premises, thereby absolving Walthal of liability. See generally 41 Fla.Jur.2d Premise Liability § 13 (1983).
We must agree with the Andersons' theory of liability, as it is eminently clear that resolution of the liability issue is bottomed on the principles of agency. It is axiomatic that a landowner or occupier owes two duties to an invitee on the premises: (1) to use ordinary care in keeping the premises in a reasonably safe condition; and (2) to give timely notice of latent or concealed perils that are known or should be known to the owner but that are not known to the invitee. Zambito v. Southland Recreation Enterprises, Inc., 383 So.2d 989 (Fla. 2d DCA 1980); see generally 41 Fla.Jur.2d Premises Liability § 14 (1983). In the instant case, Walthal, as owner of the premises, delegated that duty to Hannon, as agent and manager. In that regard, it is equally settled that knowledge of, or notice to, an agent is imputed to the principal when it is received by the agent while acting within the course and scope of his employment, and when it is in reference to matters over which the agent's authority extends. See generally 2 Fla.Jur.2d Agency and Employment § 94 (1977). Logically, the presence of Panda Girl created a dangerous condition on the premises. Should a jury conclude that Hannon had actual knowledge of the dog's presence and of her vicious propensities, and that Hannon's authority as manager included keeping the premises safe for business invitees, then that knowledge may be imputed to Walthal under the principles above enunciated. Consequently, the trial court erred in holding, as a matter of law, that Walthal had to have actual, personal knowledge of the dog's existence before he could be held liable. Because there remain genuine issues of material fact pertaining to Hannon's knowledge and scope of employment, we reverse the summary judgment entered in Walthal's favor.
Those cases cited by Walthal are not inconsistent with our holding. Uccello v. Laudenslayer did not involve a principal/agent relationship. Dickson v. Graham-Jones Paper Company held that liability for injury to a business invitee caused by an employee's "fighting cock" could not be imposed on the corporate employer absent the fact that the employee's harboring of the vicious fowl was within the scope and authority of his employment. The supreme court in Dickson discussed the theory of agency and concluded that knowledge of the viciousness of an animal "is not imputable" (emphasis added) to the employer "unless the employer directed the employee to do the specific act of keeping the animal, or unless it was reasonably foreseeable as a result of his authority as the agent." 84 So.2d at 310. Finally, the holding in Christie v. Anchorage Yacht *295 Haven, Inc., although sparse in analysis, could certainly be understood as imputing the manager's knowledge of the presence of the dog to the corporate owner of the premises, as the Christie court concluded that the owner was "charged with the knowledge" of the animal. 287 So.2d at 360. Because Walthal's argument is based on case law that actually enhances the Andersons' position, we reject it as unpersuasive.
However, Walthal further argues that, notwithstanding imputation of knowledge to him, he cannot be held liable because it was undisputed that Anderson had wandered beyond the scope of the business invitation and into an area where he could not have reasonably been expected to go. A reading of the record and depositions makes it clear that it is not "undisputed" that Anderson was in an area not covered by the invitation. The parties fundamentally disagree as to where Anderson was standing at the time he was bitten, and we have only Walthal's opinion in his deposition that he thought it unreasonable for Anderson to have wandered around the side of the building. We cannot say as a matter of law that Anderson had ventured to an area beyond the scope of his invitation; a jury question exists as to that issue. Cf. IRE Florida Income Partners, Ltd. v. Scott, 381 So.2d 1114 (Fla. 1st DCA 1979).
The Andersons' second point raises the issue of whether the trial court erred in entering summary judgment in Walthal's favor on the count for punitive damages. We affirm. In order for Walthal to be vicariously liable for punitive damages, Hannon must have engaged in willful, wanton or outrageous conduct while acting within the scope of his employment, and Walthal must also have been guilty of some fault which foreseeably contributed to the injury. See Lambert v. Doe, 453 So.2d 844, 848 (Fla. 1st DCA 1984). Without reaching the issue of Hannon's conduct, our review of the record disclosed no genuine issue of material fact as to any independent fault on Walthal's part sufficient to impose on him liability for punitive damages.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
NIMMONS, J., concurs.
ERVIN, C.J., concurs and dissents with opinion.
ERVIN, Chief Judge, concurring in part and dissenting in part.
I fully agree with the majority's disposition of the first point, reversing the entry of summary judgment against the employer Walthal as to the claim seeking compensatory damages. I agree also that there is no requirement that the employer must have actual knowledge of the animal's vicious propensities, and that such knowledge may be imputed to him through his agent. In so stating, I wish to observe a matter which is no doubt obvious: that the Andersons' theory of liability was based upon the common law negligence of both the owner of the premises and his agent; therefore it was minimally necessary for Anderson to establish knowledge on the part of the agent of the dog's viciousness, since scienter is the gist of a common law claim for damages. Ferguson v. Gangwer, 140 Fla. 704, 192 So. 196 (1939). In that neither Walthal nor Hannon were the owners of the dog, it is clear that Section 767.04, Florida Statutes, placing liability on owners of dogs which bite persons, regardless of the former viciousness of such dogs or the owners' knowledge of such viciousness, is not implicated in this case. The above statute, as made clear by Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111, 1113 (Fla. 1984), "`supersedes the common law, only in those situations covered by the statute.'" (Quoting from Carroll v. Moxley, 241 So.2d 681, 682 (Fla. 1970).) The requirement of scienter in the case at bar was sufficiently established. Walthal's agent Hannon had prior knowledge of the dog's vicious proclivities in that the dog had lunged at him on one occasion before its attack on Anderson.
*296 I take issue, however, with the majority's affirmance of summary judgment in favor of Walthal on the claim seeking punitive damages. An analysis of this question properly takes into consideration first, the question of whether the agent's conduct was such as to support a verdict of punitive damages as to him, and, if so, second, whether the principal was guilty of some fault independent from that of his agent.
As to the first issue, regarding the conduct of the employee, the supreme court's latest pronouncements on the subject of punitive damages have approved its earlier rule, stated in Carraway v. Revell, 116 So.2d 16, 19 (Fla. 1959), that the character of negligence sufficient to sustain a verdict for punitive damages is willful and wanton misconduct equivalent to criminal manslaughter. White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984); Como Oil Co. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985). Accepting the above rule as the test in the present case, it would appear to me that, if the victim had died as a result of the injuries inflicted, the evidence of the agent's misconduct would arguably support a conviction for manslaughter. Facts similar to those below in a criminal case, Munn v. State, 158 Fla. 892, 30 So.2d 501 (1947), support this statement. There appellant was convicted of manslaughter in violation of Section 782.12, Florida Statutes (1941),[1] which then read:
If the owner of a mischievous animal, knowing its propensities, shall willfully suffer it to go at large, or shall keep it without ordinary care, and such animal while so at large or not confined kills any human being, who shall have taken all the precautions which the circumstances may permit to avoid such animal, such owner shall be deemed guilty of manslaughter.
(e.s.)
The facts recited in Munn disclose that the victim was brutally attacked by a pack of pit bulldogs  the same breed of dog involved in the attack below  which, at the time, were outside an unsecured enclosure. In discussing the type of conduct prohibited by the statute, the court stated:
The gravamen of the offense ... is the negligence or lack of ordinary care exercised by one who is the owner of mischievous animals, which negligence or lack of ordinary care results in such animals being suffered or permitted to go at large and thereby placing members of the public in danger of death or great bodily harm. So, the gist of the offense is negligence.
30 So.2d at 502. Munn was held to have been properly convicted for the offense of manslaughter because of his failure to use ordinary care and precaution to confine dogs that he knew had violent propensities.
In the case at bar, Hannon was also aware of the dog's viciousness. The dog, as stated, on one occasion before the injury had lunged at Hannon, but fortunately the leash deterred the animal before it could make contact with him. Hannon considered the dog to be a guard dog, further describing it as a pit bulldog, "dogs that can be very gentle but which can then be trained to be very mean."
Hannon, as the agent of the owner involved in the rental of property to the public, owed two duties to business invitees who frequented the premises: (1) to use ordinary care in keeping the premises in a reasonably safe condition, and (2) to give timely notice of latent or concealed perils that were known or should be known to him but were not known to invitees. Zambito v. Southland Recreation Enterprises, Inc., 383 So.2d 989 (Fla. 2d DCA 1980). Hannon, notwithstanding his knowledge of the pit bull's viciousness, failed to carry out either of the two duties imposed upon him. *297 His conduct was clearly in willful and wanton disregard of a risk which he knew was present on the premises. In my judgment, his failure is the type of culpable negligence condemned by the general manslaughter statute, Section 782.07, Florida Statutes, and is therefore that type of conduct which may support a verdict for punitive damages.
The majority, however, without considering the question of Hannon's liability for punitive damages, and, relying upon Lambert v. Doe, 453 So.2d 844 (Fla. 1st DCA 1984), finds no genuine issue of material fact as to any fault on Walthal's part sufficient to impose liability on him for punitive damages. I must disagree, as I believe the agent's prior knowledge of the dog's vicious propensities, imputable to the employer, is factually distinguishable from that in Lambert, involving prior knowledge by the landlord's apartment manager of a 12-year-old tenant's propensities toward sexual deviation.
Before an employer may be vicariously inflicted with punitive damages caused by the wanton misconduct of his employee, there must be some fault on behalf of the employer, separate from that of the employee, "which foreseeably contributed to the plaintiff's injury to make him [the employer] ... liable for punitive damages. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 549 (Fla. 1981). In my judgment, genuine issues of material fact remain regarding the existence of fault on the employer's part. While Walthal was without actual knowledge of the dog's viciousness, there was testimony from the owner of the dog that before the attack occurred, Walthal was aware of the dog's presence on the premises. Walthal moreover admitted that he had given no instructions to Hannon regarding the avoidance of any dangers that dogs might pose to business invitees who happened to come on the property. After the attack, however, the dog's owner testified that Walthal had told him he wanted no more dogs on the grounds.
In addition to Walthal's admissions, Anderson's second amended complaint alleged that Walthal had breached his duty to plaintiff, a business invitee, by negligently failing to supervise his business manager and agent, or to instruct him in his duties, or to take any action, despite the presence of a vicious dog of which he could have known by the exercise of ordinary and reasonable care; and, as a result of Walthal's negligence, thereby provided the dog with the opportunity to attack and injure the plaintiff. Anderson has clearly alleged, as a separate and independent tort, Walthal's negligence in the hiring or retention of his agent Hannon. Apart from the doctrine of respondeat superior, Florida recognizes negligent hiring, training or retention as a legitimate basis of recovery against an employer. Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954); Texas Skaggs, Inc. v. Joannides, 372 So.2d 985 (Fla. 2d DCA 1979); McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970).
I conclude that the allegations and the evidence amply disclose the existence of Walthal's fault independent from that of Hannon, and that they present a submissible case for the jury's consideration. I would therefore reverse the summary judgment in its entirety as to Walthal.

ON MOTION FOR REHEARING
PER CURIAM.
DENIED.
WIGGINTON and NIMMONS, JJ., concur.
ERVIN, C.J., concurs in part and dissents in part with written opinion.
ERVIN, Chief Judge, concurring in part and dissenting in part.
I concur with the majority in denying appellee's motion for rehearing, but dissent as to the denial of appellant's motion. In his motion for rehearing, appellant cites Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530, 532 (Fla. 1985), for the position that the independent fault theory *298 of Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), requiring as a precondition to the imposition of punitive damages against the employer that there be a showing of some fault by the employer which foreseeably contributed to the plaintiff's injury, is inapplicable "to situations [ as here ] where the agent primarily causing the imposition of punitive damages was the managing agent ... of the corporation." Since the record before us reflects that Hannon was Walthal's managing agent, we need to determine only whether Hannon's conduct would support a judgment of punitive damages in order to impose the same on Walthal, without taking the additional step of deciding whether Walthal himself was guilty of some fault independent from that of his agent.
In my original dissent to the majority's opinion I have explained why the character of Hannon's negligence meets the test required by White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984). I would therefore grant appellant's motion for rehearing as it relates to the majority's opinion affirming the summary judgment in favor of Walthal on the claim for punitive damages, reverse the judgment and remand for further proceedings.
NOTES
[1] Section 782.12, Florida Statutes, was subsequently repealed by Chapter 72-253, Section 1, Laws of Florida. The Joint Legislative Management Committee's comment regarding the statute's repeal states that the acts prohibited in said statute are now covered either by section 782.04 (the statute describing the degrees of murder), or section 782.07 (the general manslaughter statute). 22 Fla. Stat. Ann. 330. The latter statute of course includes the killing of a human being by the "culpable negligence of another... ."