268 N.J. Super. 517 (1993)
634 A.2d 108
JAMES H. BENJAMIN, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR MATTHEW BENJAMIN, PLAINTIFFS-APPELLANTS,
v.
JEANETTE CORCORAN, JAMES CORCORAN AND NEW JERSEY FIREMEN'S HOME, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1993.
Decided December 1, 1993.
*519 Before Judges SHEBELL, LONG and LANDAU.
Bertram J. Latzer, argued the cause for appellant (Mr. Latzer on the brief).
Joanna L. Crosby, argued the cause for respondent (O'Donnell, Kennedy, Vespole, Piechta & Trifiolis, attorneys, Mark Robert Vespole, of counsel; Ms. Crosby, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiffs, Matthew Benjamin, an infant by his Guardian ad Litem, James H. Benjamin, and James H. Benjamin, individually, appeal the dismissal on summary judgment of their complaint against defendant, the New Jersey Firemen's Home (N.J.F.H.). Plaintiffs sued for injuries sustained by Matthew Benjamin when he was bitten on the upper arm by the dog of Jeanette and James Corcoran while on the grounds of N.J.F.H. Jeanette and James Corcoran were named as defendants when the action was instituted on October 17, 1990. On February 21, 1992, N.J.F.H. filed a motion for summary judgment, which plaintiffs opposed. On May 22, 1992, the Law Division judge heard oral argument after which he granted the N.J.F.H.'s motion for summary judgment. We denied plaintiff's motion for leave to file an interlocutory appeal by Order dated June 23, 1992. On August 31, 1992, an Order of *520 Dismissal, without prejudice, was entered as to the Corcorans. Plaintiffs then appealed as of right.
The facts are not complicated. On December 30, 1989, Matthew Benjamin, age nine, was sleigh riding on the grounds of N.J.F.H. in Boonton. He was in an area near the nursing home building and its driveway when he was bitten on the upper arm by a dog that had been purchased as a family pet by James Corcoran in 1985.
Mr. Corcoran had been the assistant superintendent of the N.J.F.H. since 1980. He lived in a house on the premises, rent free, with his wife, Jeanette, who was the director of nursing of the N.J.F.H. Mr. Corcoran died in 1988, prior to this incident. His wife continued to work at the N.J.F.H. and to live in the house on the grounds with the dog. There were two reported previous dog bites by the Corcoran dog. On one occasion the dog bit a child. On a second occasion the dog bit an adult. One of the incidents was on the public sidewalk adjacent to the N.J.F.H. premises, and the other was not near the premises. Both victims were treated in the emergency room at St. Clare's Hospital in Denville. These events took place prior to Mr. Corcoran's death.
Plaintiffs argue that the trial judge erred in granting summary judgment to the N.J.F.H. Plaintiffs contend that the N.J.F.H. is not a public entity exempt from tort liability under Title 59. They assert that even if the N.J.F.H. is a public entity, a jury could have found that the Corcorans were negligent in not removing the dangerous dog from the grounds or taking precautions to protect others from the dog, and that this negligence was imputable to N.J.F.H. as their employer based upon vicarious liability. N.J.S.A. 59:2-2. Plaintiffs also maintain that the N.J.F.H. is not immune from liability under the Landowner's Liability Act, N.J.S.A. 2A:42A-2 to -8, since the property is located in a densely-populated area.
Defendant N.J.F.H. argues that the trial judge properly held that it is a public entity and that it was not vicariously liable because ownership of the dog was not within the scope of the *521 Corcorans' employment. N.J.F.H. also contends that the trial judge properly found that the N.J.F.H. was immune from liability under the Landowner's Liability Act because Matthew was sleigh riding on the property, thereby using the property for recreational purposes.
Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law." R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). The standard of review on appeal is the same. Therefore, we must decide whether there was a genuine issue of fact, and if there was not, whether the Law Division judge's ruling on the law was correct.
The trial judge granted summary judgment to the N.J.F.H. after determining that the N.J.F.H. is a public entity immune from tort liability. The trial judge found that the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, does provide immunity, stating:
[T]he question here is; is this that kind of an organization, for want of a better word, by virtue of the statute which was originally enacted as I interpreted it back in 1898. And the language in 30:7-1 it says that the Board of Managers of the New Jersey Firemen's Home is hereby constituted as an agency. The Board of Managers is constituted an agency within the state department institution. So you see, I make that emphasis because they're speaking of this group of people which is now a part of the New Jersey State Department of Institution Agency, cabinet level executive office and so on. I think that is very clear and that is the intention of the Legislature it would be part of the state government.
Public entity includes "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3 (emphasis added). The comment to this section states:
The definition of "Public Entity" provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions. The intent of this provision is to provide a basis upon which an established body of law may be uniformly applied. For the purpose of establishing liability in the State of New Jersey this definition is *522 specifically intended to include such entities as the New Jersey Highway Authority and Turnpike Authority and Rutgers the State University.

[Comment N.J.S.A. 59:1-3.]
The Legislature in its session of 1898 enacted Chapter 127, "authorizing a firemen's home for the aged, indigent and disabled firemen of this state, and providing for the regulation and government of such home." The purchase of the land and erection of the building were to be financed by $75,000 from the two percent tax on foreign (out-of-state) fire insurers. L. 1898, c. 127. In its session of 1899, the Legislature enacted Chapter 20, making further provision for the purchase of property for the home, and granting all real and personal property of the "board of managers of the New Jersey firemen's home" an exemption "from taxation, state or municipal, under any law of this state." L. 1899, c. 20.
The laws pertaining to the N.J.F.H. are codified in Title 30, Institutions and Agencies, Subtitle 5, Other Institutions in General, Chapter 7, New Jersey Firemen's Home. Under N.J.S.A. 30:7-1, the N.J.F.H. is governed by a board of managers, elected for a four-year term, and who serve without compensation. The board includes the President of the New Jersey State Firemen's Association, the Governor of the State, the State Commissioner of Banking and Insurance, the State Comptroller, one member elected from each of the twenty-one counties, and one additional member who must be a paid fireman elected from Essex and Hudson County. N.J.S.A. 30:7-1. The elected members are elected by the New Jersey State Firemen's Association. N.J.S.A. 30:7-1.
Under N.J.S.A. 30:7-3, the board of managers may appoint a chairman, secretary, treasurer, and superintendent. The superintendent appointment is subject to the governor's approval. N.J.S.A. 30:7-3. One of the managers must visit the N.J.F.H. at least once every two weeks, and the board must visit at least once in every three months. N.J.S.A. 30:7-9. The board must file an annual report to the governor. N.J.S.A. 30:7-10. To provide the means necessary to sustain the N.J.F.H., the managers may *523 receive bequests or devises and other voluntary contributions. N.J.S.A. 30:7-11.
The statute provides "[t]he board of managers of the New Jersey Firemen's Home is hereby constituted an agency within the State Department of Institutions and Agencies...." N.J.S.A. 30:7-1 (emphasis added). However, plaintiffs, in their brief, point to several examples of contrasting language in the statutes governing other public entities. An example they give is the New Jersey Turnpike Authority, governed by N.J.S.A. 27:23-3, which reads as follows:
(A) There is hereby established in the State Highway Department a body corporate and politic, with corporate succession, to be known as the "New Jersey Turnpike Authority." The authority is hereby constituted an instrumentality exercising public and essential governmental functions, and the exercise by the authority of the powers conferred by this act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the State.

[Emphasis added.]
The statute goes on to say that each member of the authority must be appointed by the Governor, with the advice and consent of the Senate. N.J.S.A. 27:23-3(B).
Another public entity with differing statutory language is the New Jersey Sports and Exposition Authority, which is governed by N.J.S.A. 5:10-4. The language is as follows:
The authority is hereby constituted as an instrumentality of the State exercising public and essential governmental functions, and the exercise by the authority of the powers conferred by the act shall be deemed and held to be an essential governmental function of the state. ...

[N.J.S.A. 5:10-4a (emphasis added).]
This act also requires that the members of the authority be appointed by the Governor with the advice and consent of the Senate. N.J.S.A. 5:10-4b.
The New Jersey Housing and Mortgage Finance Agency is another such agency. The statute governing this agency is N.J.S.A. 55:14K-4i, which provides as follows:

*524 The agency is ... constituted a body politic and corporate and an instrumentality exercising public and essential governmental functions, and the exercise by the agency of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State.

[Emphasis added.]
Members of this agency are also appointed by the Governor with the advice and consent of the Senate. N.J.S.A. 55:14K-4j.
The Acts pertaining to the New Jersey Transit Corporation and the New Jersey Highway Authority employ language similar to that previously cited. The statutes governing both of these agencies use the language "body corporate and politic," and "constituted an instrumentality of the State exercising public and essential governmental functions." N.J.S.A. 27:25-4a; N.J.S.A. 27:12B-4. The members of both of these agencies are appointed by the Governor with the advice and consent of the Senate. N.J.S.A. 27:25-4b; N.J.S.A. 27:12B-4.
The New Jersey Firemen's Home statute, N.J.S.A. 30:7-1 to -12, specifically designates the N.J.F.H.'s board of managers as an "agency within the State Department of Institutions." N.J.S.A. 30:7-1. The N.J.F.H. is not declared by the Legislature to be a "body politic" with an "essential governmental function." However, as N.J.F.H. points out in its brief on appeal, this statute is older than the contrasting statutes. The Legislature clearly expressed its intent that the N.J.F.H. be controlled, managed and governed by the board of managers as agents of the State. We do not perceive that its functions are any less governmental than those of the previously mentioned public entities. See Comment N.J.S.A. 59:1-3; see also N.J.S.A. 4:1-1 to -19 (State Board of Agriculture). We conclude that the board of managers constitutes a public entity. The board of managers, by law, totally controls every aspect of the ownership and operation of the N.J.F.H. Therefore, even if the N.J.F.H. were found to be a distinct corporate body, as apparently is revealed through answers to interrogatories, the N.J.F.H. would still constitute a public entity, as there is no area left beyond the statutory powers of the board of managers for independent operation of the N.J.F.H.
*525 Plaintiffs have directed our attention to the recent case of Waldie v. State, 264 N.J. Super. 558, 625 A.2d 37 (App.Div. 1993). Plaintiffs argue that since the N.J.F.H. is "statutorily authorized to sue and be sued" it is not exempt as a public entity under the New Jersey Tort Claims Act. The facts and holding of Waldie are different. The mere fact the N.J.F.H. may operate as a not-for-profit corporation does not preclude it from constituting a public entity under the New Jersey Tort Claims Act.
In Waldie, two New Jersey State Troopers brought an action against the New Jersey Turnpike Authority for reimbursement of legal fees incurred in successfully defending against criminal charges arising from their official duties. Waldie, supra, 264 N.J. Super. at 561, 625 A.2d 37. We held that the troopers could not recover because the indemnification provision of the Tort Claims Act, N.J.S.A. 59:10-2.1, directs that the State must pay the reimbursement. Id. at 563, 625 A.2d 37. The definition of "state" under N.J.S.A. 59:1-3, excludes any "entity which is statutorily authorized to sue and be sued," and the Turnpike Authority is an independent agency distinct from the State, which is authorized to sue and be sued. Ibid. The Turnpike Authority is nonetheless a public entity entitled to the protection of the Tort Claims Act.
The N.J.F.H. apparently responded in answers to interrogatories that it is a non-profit corporation under the laws of the State of New Jersey. If so incorporated, it would have the power to sue and be sued. N.J.S.A. 15A:3-1a(2). Under N.J.S.A. 59:1-3, the definition of "state" excludes any "entity which is statutorily authorized to sue and be sued." Therefore, all that can be concluded from these facts on the authority of Waldie is that the N.J.F.H. would not be the "State" under the Tort Claims Act. Thus, the holding in Waldie does not detract from our conclusion that the N.J.F.H. is a public entity.
We next consider plaintiffs contention that even if the Tort Claims Act applies, the trial judge, nonetheless, incorrectly granted summary judgment because, under N.J.S.A. 59:2-2, the N.J.F.H. would be liable based upon a theory of vicarious liability. *526 Public entities are not liable for injury, except as such liability may be afforded by the New Jersey Tort Claims Act. N.J.S.A. 59:2-1. In Tice v. Cramer, 133 N.J. 347, 355, 627 A.2d 1090 (1993), our Supreme Court addressed the question of whether police officers in pursuit of a vehicle that refused to stop are liable for injuries resulting from that pursuit. Id. at 350, 627 A.2d 1090. Although the Court found the officers immune under N.J.S.A. 59:5-2b(2), it also discussed the issue of vicarious liability of public entities, stating:
The primary liability imposed on public entities is that of respondeat superior: when the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity. N.J.S.A. 59:2-2.

[Tice, supra, 133 N.J. at 355, 627 A.2d 1090.]
The statute pertaining to vicarious liability for public entities, N.J.S.A. 59:2-2, provides as follows:
a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.
b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.
James Corcoran had been the assistant superintendent at the N.J.F.H. from 1980, until his death in 1988. His responsibilities included running the home when the superintendent was not there. A jury could find on the present record that it was the responsibility of the superintendent and the assistant superintendent to protect against known dangers, not only for the people living there, but also for others known to come upon the property.
The deposition of the former superintendent of the N.J.F.H., who served until his retirement in 1992, sets forth what he would have done if there were a dangerous dog on the premises. He testified as follows:
Q. My question is: If it came to your attention that there was a dangerous animal on the premises, would you consider it within your job responsibilities to respond to that situation?
A. Should I answer it?

*527 [Defendant's attorney]: Are you directing his attention to when he was a Superintendent, and are you indicating from whom he received this information?
[Plaintiffs' attorney]: I want to know whether or not that is within the job responsibilities of the Super or Assistant Super to respond to that kind of a situation.
[Defendant's attorney]: You can answer.
A. I would call the police department.

Q. Why?
A. Because it's dangerous.

Q. Okay.
A. I have sense.
[Emphasis added.]
Mrs. Corcoran also had responsibilities to the N.J.F.H. as she was the director of nursing. Her specific duties included writing and setting nursing policies, scheduling, payroll, and patient care and assessment. Nonetheless, a jury might reasonably conclude that it was part of her overall responsibility to ensure that the grounds were safe from dangerous conditions that she knew about and could have prevented, particularly in view of the fact that she lived in a home on the premises, provided to her by the N.J.F.H. A jury could find that the Corcorans were required to take action to remove the dog since they knew it had vicious propensities and constituted a threat to people whom they had an obligation to protect. Because this obligation derived from their employment, their negligence would be imputable to their employer, N.J.F.H. N.J.S.A. 59:2-2.
The trial judge found that ownership of the dog had nothing to do with the operation of the Home. On this issue, the trial judge stated:
The question of vicarious liability, I think, has been disposed of by the facts in the case here that this dog had nothing to do with the operation of the home. It was only the personal property of an employee who was given a house as part of the compensation for being there. It's rental. It's a tenant, comes pretty close to Cogsville.

The trial judge went on to say that vicarious liability does not apply "beyond the scope of the employment contract."
The trial judge's reliance on Cogsville v. Trenton, 159 N.J. Super. 71, 386 A.2d 1362 (App.Div. 1978) is misplaced. In Cogsville, *528 the infant plaintiff was injured when she was bitten by a dog owned by a month-to-month tenant of a single-family house owned by the City of Trenton. Id. at 72, 386 A.2d 1362. We held that the city, as landlord, was not liable for injuries caused by the tenant's dog, explaining that landlord liability is limited to situations where either the nuisance existed prior to the letting, or where the nuisance was the direct result of a use agreed to by the landlord. Id. at 74, 386 A.2d 1362. We also held that the City was not liable under a provision of the New Jersey Tort Claims Act, N.J.S.A. 59:4-2, holding a public entity liable for dangerous conditions on its property. We explained that the term "dangerous conditions" is restricted to physical conditions. Ibid. Here, the theory is not landlord liability. Plaintiffs' case is based on vicarious liability involving an employer-employee relationship, not a landlord-tenant relationship.
The N.J.F.H., in its brief, asserts that since the Corcoran dog was a family pet, no principal-agent relationship existed. Although the Corcorans were tenants of the N.J.F.H., they were also employees of the N.J.F.H. The appropriate question is not whether it was in the scope of their employment to own a dog, but rather, whether it was within the scope of the Corcorans' employment to keep the premises safe. N.J.S.A. 59:2-2. Depending on the proofs adduced at trial, a jury could have found that either or both of them had a duty within the scope of their employment to keep the premises safe by not harboring a dog that to their knowledge had bitten persons in the past.
Plaintiff cites the case of Anderson v. Walthal, 468 So.2d 291 (Fla. Dist. Ct. App. 1985). In Anderson, the plaintiff was attacked by a pit bull terrier while on the property of a warehouse. Anderson, supra, 468 So.2d at 293. The animal was owned by one of the tenants of the warehouse, but the manager was on site and had knowledge of the dog's presence. Ibid. The owner of the warehouse, however, did not have actual knowledge of the presence of the vicious dog. Ibid. The Florida court, in holding the owner vicariously liable, stated:

*529 Walthal, as owner of the premises, delegated that duty [duty to use ordinary care to keep premises in safe condition and to give notice to invitees] to Hannon, as agent and manager.
In that regard, it is equally settled that knowledge of, or notice to, an agent is imputed to the principal when it is received by the agent while acting within the course and scope of his employment, and when it is in reference to matters over which the agent's authority extends.

[Id. at 294.]
Based upon the above principles of agency, the knowledge of the Corcorans as to the viciousness of the dog may be imputed to the N.J.F.H. It was the responsibility of the Corcorans to control the dog, remove it from the premises, or otherwise provide the necessary protection. They were the agents of the N.J.F.H., therefore, no question of whether it was within the power of the N.J.F.H. to remove the dog or to properly restrain it from harming others is presented. The issue to be presented to the jury is whether the Corcorans acted reasonably under all of the circumstances in keeping the dog on the N.J.F.H. premises and/or in failing to properly restrain it knowing of its prior actions. The defendant N.J.F.H. was not entitled to summary judgment on this issue.
Further, the trial judge erred in holding that the N.J.F.H. was immune from liability under the Landowner's Liability Act, N.J.S.A. 2A:42A-3. The Act has no application to improved lands which are located in a populated suburban area.
The relevant section of the Landowner's Liability Act, N.J.S.A. 2A:42A-3, absolves a covered landowner of any duty of care. It provides the following:
a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to person entering for such purposes;
b. An owner, lessee or occupant of premises who gives permission to another to enter upon such premises for a sport or recreational activity or purpose does not thereby (1) extend any assurance that the premises are safe for such purpose, or (2) constitute the person to whom permission is granted an invitee to whom a duty *530 of care is owed, or (3) assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted.

[N.J.S.A. 2A:42A-3.]
Under N.J.S.A. 2A:42A-2, the phrase "sport and recreational activities" is defined. The statute provides as follows:
As used in this act "sport and recreational activities" means and includes: hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity, including practice and instruction in any hereof.

[N.J.S.A. 2A:42A-2.]
Thus, sledding is included in the definition of "sport and recreational activities," in the Act.
The Landowner's Liability Act was interpreted by the Supreme Court in Harrison v. Middlesex Water Co., 80 N.J. 391, 403 A.2d 910 (1979). In Harrison, decedent's wife brought a wrongful death action against Middlesex Water Company and the Township of Clark. Id. at 394, 403 A.2d 910. Decedent died in a reservoir on the defendant's property while attempting to rescue two teen-age boys who had fallen through the ice while skating. Id. at 395, 403 A.2d 910.
The surrounding area of the reservoir was heavily populated, bounded by a high school, several athletic fields, a tennis court, two social clubs and many private homes. Id. at 394, 403 A.2d 910. The Court found that the defendant Middlesex Water Community was not immune under the Landowner's Liability Act, stating:
The land on which the tragic drowning occurred in this litigation was on an improved tract situated in a highly populated suburban community. It is surrounded by both private homes as well as public recreational facilities. It is unlike lands located in rural or woodland reaches where the activities of people thereon cannot be supervised or controlled and where the burden of guarding against intermittent trespassers may far outweigh any risk to such persons and the presence of such persons may be difficult to foresee and contain. In contrast, the reservoir area here lies in a populous setting where such factors are less substantial. We conclude therefore that Middlesex Water Company cannot assert immunity *531 or the absence of a duty of care under the Landowner's Liability Act as a defense to the wrongful death claims asserted against it in this case.

[Id. at 401-402, 403 A.2d 910 (citations omitted).]
In the present case, the grounds of the N.J.F.H., where the infant plaintiff was sleigh riding, were located on an improved tract of land in a populated suburban area. The grounds of the N.J.F.H. are surrounded by residential lots. On the grounds, there were several buildings, including: the N.J.F.H. administration building and main building, two houses, and a barn. The location where plaintiff was sleigh riding when he was attacked was near the structures and driveway, and only 100 to 150 feet from the Corcoran house. This land was not located in a rural or woodland area. Harrison, supra, 80 N.J. at 402, 403 A.2d 910.
In arguing that it is immune under the Landowner's Liability Act, defendant N.J.F.H. recounts that sledding is specifically within the definition of "sport and recreational activities" of N.J.S.A. 2A:42A-2. However, the activity in Harrison, ice skating, is also included in the statutory definition of "sport and recreational activities." The Supreme Court, nonetheless, found no immunity because of the improved, non-rural characteristics of the property, and noted that the legislative intent was not to fashion a broad immunity. Id. at 401, 403 A.2d 910. The Court specifically stated: "[t]he uncertainty as to the type of lands intended to be covered is not totally eliminated by the broad numeration of `sport and recreational activities' in N.J.S.A. 2A:42A-2." Id. at 397, 403 A.2d 910.
The defendant N.J.F.H., in arguing that it is immune under the Landowner's Liability Act, contends that plaintiff Matthew Benjamin testified that he had been sledding on the property at least twenty times, and his father plaintiff James Benjamin testified that he had been sledding there on approximately 200 occasions. While this is correct, it does not affect the outcome under Harrison. In Harrison, the Court found no immunity, even though it *532 acknowledged that the reservoir waters were used for swimming and ice skating for a long time. Id. at 395, 403 A.2d 910.
Defendant N.J.F.H. cites the following cases which have found immunity under the Landowner's Liability Act: Labree v. Millville Mfg., Inc., 195 N.J. Super. 575, 481 A.2d 286 (App.Div. 1984); Lauber v. Narbut, 178 N.J. Super. 591, 429 A.2d 1074 (App.Div.), certif. denied, 89 N.J. 390, 446 A.2d 127 (1981); Magro v. City of Vineland, 148 N.J. Super. 34, 371 A.2d 815 (App.Div. 1977); and Diodato v. Camden County Park Comm'n, 162 N.J. Super. 275, 392 A.2d 665 (Law Div. 1978). All of these cases are factually different from the present case in that they all involve rural or undeveloped land. Further, the improvements at the N.J.F.H., such as the nursing home, houses, and barn, were not incidental to any recreational use, such as sledding.
The cited cases do not support the position that the defendant N.J.F.H. would be immune from liability under the Landowner's Liability Act, especially since the Court in Harrison found that the statute should be given narrow range. Harrison, supra, 80 N.J. at 401, 403 A.2d 910. The record provides ample evidence that the subject property was developed land in a populated suburban area. Even if an issue of fact existed respecting whether the property characteristics of the N.J.F.H. grounds are sufficiently rural or semi-rural as to qualify for immunity under the Landowner's Liability Act, N.J.S.A. 2A:42A-3, N.J.F.H. was not entitled to summary judgment on the issue. R. 4:46-2.
We reverse the order granting summary judgment to the defendant N.J.F.H. and remand for further proceedings in accordance with this opinion.