697 A.2d 149

STEVEN MCCOLLEY, AN INFANT, BY HIS GUARDIAN AD LITEM, SUSAN MCCOLLEY AND SUSAN MCCOLLEY, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. EDISON CORPORATION CENTER, GARDEN HOMES MANAGEMENT AND THE KAPLAN ORGANIZATION, ABC CORPORATION (A FICTITIOUS BUSINESS ENTITY), EDISON PROPERTY CORPORATION AND BANKERS TRUST, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1997—Decided July 21, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Francis E. Wilton* argued the cause for appellants (*Gill & Chamas*, attorneys; *Mr. Wilton*, on the brief).

*Joseph A. Gallo* argued the cause for respondents Edison Corporate Center, Garden Homes Management Co. and The Kaplan Organization (*Wilson, Elser, Moskowitz, Edelman & Dicker*, attorneys; *James C. Orr*, of counsel; *Mr. Orr, Mr. Gallo* and *Elizabeth R. Charters*, on the brief).

*Robert L. Lieberman* argued the cause for respondent Edison Property Corporation (*Margolis Edelstein*, attorneys; *Mr. Lieberman*, on the brief).

*John E. Lamastra* argued the cause for respondent Bankers Trust, Inc. (*Scanlon & Heim*, attorneys; *Mr. Lamastra*, on the brief).

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

Fourteen-year-old Steven McColley was riding a motorized bike on private property in Edison, New Jersey when he was caught by a wire cable strung two-and-one-half feet from the ground across the end of a paved roadway. The motion judge granted summary judgment to all defendants because he concluded that Steven was a trespasser to whom defendants owed no duty. We disagree. The motion judge erred in finding no duty either to warn plaintiff about a wire cable across a path; or to remove an existing cable; or to refrain from placing such a cable. Material questions of fact required that a jury determine whether any defendant breached a duty to Steven. *See R.* 4:46–2; *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Because there were factual questions about ownership and control of the property among the defendants, we reverse and reinstate the complaint against all defendants.

Plaintiffs Steven McColley and Susan McColley[1] (plaintiff or Steven) appeal from an order denying reconsideration of summary judgments dismissing their complaint against all defendants for injuries Steven suffered in the accident. Plaintiffs contend that Steven should be deemed a "tolerated intruder" and therefore more akin to a licensee than a trespasser. See Restatement § 330, Comment C. The defendants argue that Steven was a

---

[1] Susan McColley is Steven's mother and Guardian ad Litem. Her complaint individually is derivative of Steven's, and we therefore do not discuss her claim separately.

trespasser to whom the property owner(s) owed only a duty to refrain from willfully injurious acts. The motion judge concluded that Steven was a trespasser, and apparently concluded that there was no willful injury and therefore no liability on the part of any defendant.

The property was owned or controlled by defendants Edison Corporate Center, Garden Homes Management and The Kaplan Organization[2] until May 19, 1992, less than seven weeks before the accident. On that date Bankers Trust as mortgagee took title by deed in lieu of foreclosure. In accordance with its usual procedure, Bankers Trust immediately transferred title to its wholly owned subsidiary, defendant Edison Property Corporation. Edison Property held title on the day of the accident.

For purposes of this appeal, plaintiffs' factual contentions must be assumed. The cable ran between two pillars where the asphalt ended and a dirt road began. Steven and other young people had been riding motorbikes on the property, including the path where Steven was hurt, for about two years prior to this accident. Until the day of Steven's accident, neither he nor his riding companions had ever encountered wire across the path, nor had they ever been warned off the property or away from this road. There was evidence that the wire was not visible from a moving motorbike, that the defendants were aware that youngsters were riding motorbikes in the area, that there was no posted warning to keep off the property or the road, and certainly no warning of the wire barrier.

Our decision is informed by the Supreme Court's discussion of premises liability in several recent cases, emphasizing general principles of tort liability over traditional common law classifications. *See Kuzmicz v. Ivy Hill Park Apts., Inc.,* 147 *N.J.* 510, 688

---

[2] The record is unclear as to the specific role of each of those three entities, and we cannot determine which was the mortgagor. All three are represented by the same attorney, and we leave any distinction between them to the trial court on remand.

A.2d 1018 (1997) (landlord had no duty to protect tenant from assault on neighboring vacant lot); *Brett v. Great American Recreation, Inc.,* 144 *N.J.* 479, 677 *A.*2d 705 (1996) (ski-area operator owed common law duty to tobogganers using lighted ski trail after hours); *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 625 *A.*2d 1110 (1993) (real estate broker owed duty to visitor touring open house). Under either traditional analysis or general tort principles, one or more of the defendants owed Steven some duty.

Under traditional analysis, the duty owed by a landowner depends upon how the injured party is classified.

> The traditional common law approach to landowner or occupier tort liability toward a person who has been injured because of a dangerous condition on private property is predicated on the status of the person on the property at the time of the injury. Historically the duty of the owner or occupier to such a person is gauged by the right of that person to be on the land. That status is determined by which of three classifications applies to the entrant, namely, that of a business invitee, licensee, or trespasser. *E.g. Snyder v. I. Jay Realty,* 30 *N.J.* 303, 153 *A.*2d 1 (1959).
>
> An owner or possessor of property owes a higher degree of care to the business invitee because that person has been invited on the premises for purposes of the owner that often are commercial or business related. A lesser degree of care is owed to a social guest or licensee, whose purposes for being on the land may be personal as well as for the owner's benefit. The owner owes a minimal degree of care to a trespasser, who has no privilege to be on the land.
>
> [*Hopkins, supra,* 132 *N.J.* at 433, 625 *A.*2d 1110.]

Under traditional analysis, even an adult trespasser, much less a child, is entitled to warning of a serious artificial danger.

> The duty owed to a trespasser is relatively slight. A landowner, under most circumstances, has a duty to warn trespassers only of artificial conditions on the property that pose a risk of death or serious bodily harm to a trespasser. *Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 435 *A.*2d 540 (1981); *Restatement (Second) of Torts* § 337 (1969). To the social guest or licensee, the landowner owes a greater degree of care. Although the owner does not have a duty actually to discovery latent defects when dealing with licensees, the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware.
>
> [*Id.* at 434, 625 *A.*2d 1110.]

*See also* Restatement § 335, Comment c. It can hardly be disputed that the wire cable, strung as it was, created an artificial condition that posed a risk of serious bodily harm.

We held in two recent cases that a railroad owed a duty of care to known trespassers, and the duty went beyond merely refraining from intentional injury. *Ocasio v. Amtrak,* 299 *N.J.Super.* 139, 690 *A.*2d 682 (App.Div.1997) (adult walking on elevated tracks accessible by open stairway at abandoned station); *Boyd v. Conrail,* 291 *N.J.Super.* 608, 677 *A.*2d 1182 (App.Div.1996) (child crossing tracks at known shortcut between homes and school). In both cases a key fact was the defendant's awareness that others commonly made similar use of the property.

In applying traditional trespasser liability rules, New Jersey has long followed the infant-trespasser exception of the Restatement (Second) of Torts § 339 (1963) and (1964). *See Vega by Muniz v. Piedilato,* 294 *N.J.Super.* 486, 492, 683 *A.*2d 845 (App.Div.1996). Section 339 provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

We have previously recognized that there is no precise age, at which § 339 liability no longer applies to a minor. *Vega, supra,* 294 *N.J.Super.* at 494, 683 *A.*2d 845; Restatement § 339, Comment c. Steven's age is but one factor, along with the nature and obviousness of the risk and the likelihood that the risk would be

appreciated by a fourteen-year-old under similar circumstances. Thus § 339 liability cannot be ruled out on summary judgment.

■ The *Hopkins* court had difficulty classifying either the plaintiff or the defendant in traditional terms and noted that "the evolution toward a more resilient approach to premises liability has been gradual but perceptible." 132 *N.J.* at 436, 625 *A.*2d 1110.

> Clearly, it is becoming increasingly difficult to define our modern circumstances by resort to the rigid constructs of the early common law. In a case such as this in which the legal relationships are not precisely defined, the attempt to pigeon-hole the parties within the traditional categories of the common law is both strained and awkward. Moreover, to analogize the status of the parties to the common law classifications holds no great comfort that the analysis will center on factors that will lead to a sound principle of tort liability.
>
> [*Id.* at 437–38, 625 *A.*2d 1110.]

The Court's conclusion in *Hopkins* applies here as well.

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. *Goldberg[ v. Housing Auth.], supra,* 38 *N.J.* [578] at 583, 186 *A.*2d 291 [(1962)]. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. *Ibid.* The analysis is both very fact specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [*Id.* at 439, 625 *A.*2d 1110.]

Whether each of the defendants owed and breached a duty to Steven, under all the circumstances, requires answers to several material questions of fact, including but not necessarily limited to whether each defendant knew or should reasonably have known that persons like Steven had been motorbiking on the property; if so, for how long, and what steps the defendant took to prevent such use; who placed the wire cable across the road and why; and how visible the wire cable was.

■ If the purpose of the wire was to keep out trespassers, a reasonable property owner would recognize that a wire strung between two posts, two and one-half feet above the ground, is unlikely to keep trespassers out. The wire appears to have been a

virtual trap for motorbike riders like Steven. Nevertheless, the motion judge reasoned that plaintiff could not contend that the wire was "invisible" because plaintiff did not have an expert report. Plaintiff needs no expert to support his allegation that the wire was invisible to a bike rider. A lay jury can appreciate and evaluate the testimony of fact witnesses regarding the visibility of the wire. *See Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 283, 445 *A.*2d 1141 (1982).

 There are also material questions of fact regarding each defendant's relationship to the property, to the wire cable, and to the other defendants. These questions must be resolved at trial.

Bankers Trust won summary judgment before discovery was complete. The other defendants were dismissed on motion after discovery. Plaintiff's motion for reconsideration of the later judgments sought to vacate the Bankers Trust judgment as well. Subsequent discovery revealed that eight days after the accident, Bankers Trust authorized a contractor to repair or replace the cable.

 A parent corporation is not routinely liable for the torts of the subsidiary. *Department of Envtl. Prot. v. Ventron Corp.*, 94 *N.J.* 473, 500, 468 *A.*2d 150 (1983). However, where the parent exercises control over the subsidiary or over the property that gives rise to the tort claim, the parent may be liable. Plaintiff offered sufficient evidence that Bankers Trust exercised control over the property, and the motion judge should have vacated the summary judgment that was prematurely entered.

Under either traditional definitions or the *Hopkins* formulation, one or more of the defendants owed Steven a duty, and plaintiff is entitled to a jury trial. The trial judge is to define the applicable duty for the jury. If after hearing all the evidence the trial judge concludes that the relationship between plaintiff and any defendant does not fit one of the traditional classifications, the judge should define defendant's duty in general negligence terms—"a general duty to exercise reasonable care in preventing foreseeable

harm" under the existing circumstances. *Hopkins, supra,* 132 *N.J.* at 438, 625 *A.*2d 1110.

Reversed and remanded for further proceedings consistent with this opinion.