730 A.2d 911

TIMOTHY M. MANCUSO, AN INFANT BY HIS GUARDIANS AD LITEM, WILLIAM MANCUSO AND JACQULYN MANCUSO, AND WILLIAM MANCUSO AND JACQULYN MANCUSO, INDIVIDUALLY, PLAINTIFFS–RESPONDENTS, v. HENRY KLOSE, CAROLINE KLOSE, DEFENDANTS–APPELLANTS, AND FRED ALLGEYER AND MRS. FRED ALLGEYER, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted June 2, 1999—Decided June 23, 1999.

Before Judges LONG, WEFING and CARCHMAN.

*Roger C. Steedle,* attorney for appellants (*Charles E. Woolson, Jr.,* on the brief).

*Tuohy, Tuohy & Blee,* attorneys for respondents (*Michael J. Blee,* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

Plaintiff, Timothy Mancuso, when eleven years old, sustained injuries to his hand and wrist when he fell on glass while running over a downed portion of a fence on to land owned by his next door neighbors, defendants Henry Klose and Caroline Klose. Timothy's parents, plaintiffs William Mancuso and Jacqulyn Mancuso, individually and as his guardians ad litem, brought suit against the Kloses and Mr. and Mrs. Fred E. Allgeyer, the owners of the Mancuso house. The matter proceeded to trial,[1] and the jury returned a verdict finding that the Kloses were eighty-five percent negligent and the Allgeyers were fifteen percent negligent. The jury awarded plaintiffs a total recovery of $195,000, which the trial judge molded to $165,750, representing the reduc-

---

[1] Prior to trial, the Allgeyers settled with plaintiffs. All references to "defendants" will refer to the Kloses.

tion for the Allgeyers' fifteen percent negligence. Defendants appeal.

On appeal, the Kloses contend that the motion judge erred in denying their motions for summary judgment and involuntary dismissal based on (1) the application of the Landowner's Liability Act, *N.J.S.A.* 2A:42A–2 to –10 (the Act), asserting that Timothy's activity on their property brought them within the protection of the Act; (2) the application of the Act, because of the nature and character of the area; and (3) the failure of plaintiffs to prove the elements of the infant-trespasser exception of the *Restatement (Second) of Torts* § 339(c) (1965). We conclude that the Act does not apply under the facts presented here, and that there was a jury question, decided in plaintiff's favor, as to the infant-trespasser exception. We finally conclude that the trial judge did not err in refusing to charge the provisions of the Act to the jury. Accordingly, we affirm.

These are the facts adduced during discovery and ultimately at trial. In June 1994, Timothy lived with his parents in a house in Port Republic which they rented from the Allgeyers. They had lived there for approximately six months. Timothy described Port Republic as "a real rural area," with "a lot of woods, forestry, shrubs, [and] plants." It was "pretty far between neighbors," was "not like the city," and there were no sidewalks or street lights.

The Kloses lived next door to plaintiffs. A fence separated the two properties. Timothy described the fence as being in "[p]retty poor" condition. It was an older wire fence, similar to a chicken fence, which was rusted and down in some parts.

On June 16, 1994, Timothy received a telephone call from Jared Young, his best friend in the fifth grade, who lived on the side of the Kloses' property. Jared invited Timothy to come over "quick" because "a bunch of boys from fifth and sixth grade[s] were getting together to play a big game of tag," and it was about to start. Although there were other routes to Jared's house, Timothy normally used a path which led from his side yard, through

the Kloses' yard, and to the Youngs' yard. He took that path about twice per day. Although disputed by the Kloses, Timothy stated neither Mr. nor Mrs. Klose had told him that he was not permitted on their property. There was a pile of debris on the Kloses' property which Timothy had noticed prior to the date of the accident, but he had never been warned that he should not walk near the debris pile.

After receiving the call from Jared, Timothy "took off out the door running." He explained what happened next as he ran over a downed portion of the fence:

> I—the normal thing, ran down the steps to the side yard and was going across the fence, and my foot got caught in the end. So I, real fast, put my hands up like this, right over left, to cover my face if I was going to fall, and I hit the glass, and it broke. I turned over and looked at my hand, it was—it was weird. It just—all of sudden I couldn't feel it anymore, and there was just blood everywhere. So I ran back to the house.

Timothy described the area in which he fell as "kind of like a big dump pile" with paint cans, an old door, glass, mirrors, wheelbarrows, and wood debris. He cut his hand on glass.

Although he was aware that there was glass in the area, Timothy took the path every day and never thought anything about the possibility of injuring himself. As an eleven-year-old child, he claimed that he did not understand the risk involved in using the path.

We start our analysis by a review of the Act. The Act provides, in pertinent part:

> An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, *owes no duty to keep the premises safe for entry or use by others for sport and recreational activities,* or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes.
>
> [*N.J.S.A.* 2A:42A-3(a) (emphasis added).]

The Act defines "sport and recreational activities" to include "hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing, operating or riding snowmobiles, all-terrain vehicles

or dirt bikes, and any other outdoor sport, game and recreational activity including practice and instruction in any thereof." *N.J.S.A.* 2A:42A–2.

Immunity under the Act does not extend to owners or occupants of land located "in residential and populated neighborhoods," *Harrison v. Middlesex Water Co.*, 80 *N.J.* 391, 397, 403 *A.*2d 910 (1979), but was intended to provide immunity for "undeveloped, open and expansive rural and semi-rural properties." *Id.* at 400, 403 *A.*2d 910; *see also Labree v. Millville Mfg., Inc.*, 195 *N.J.Super.* 575, 581, 481 *A.*2d 286 (App.Div.1984) (reiterating the principles set forth in *Harrison* ).

The Kloses contend that the Act applied and that they were entitled to immunity because (1) Timothy's running on their land was using the property for "recreational activities;" and (2) the property was located in a semi-rural area. The judge denied defendants' application for summary judgment explaining that he did not think sport and recreational activities within the purview of the Act "include[d] a couple of 11–year–old kids playing tag." Furthermore, citing *Labree, supra,* 195 *N.J.Super.* at 581, 481 *A.*2d 286, he concluded that immunity under the Act did not extend to landowners such as defendants whose property is located in residential and populated neighborhoods even if those neighborhoods were part of a larger undeveloped, open, and expansive rural and semi-rural areas.

Defendants argue that the Act covers any "outdoor sport, game and recreational activity including practice and instruction," *N.J.S.A.* 2A:42A–2. Citing *Tallaksen v. Ross,* 167 *N.J.Super.* 1, 400 *A.*2d 485 (App.Div.1979), defendants assert that we have held that the act of running is a recreational activity within the Act. In *Tallaksen,* however, the child was "ice skating and engaging in horseplay" on a frozen swamp on the landowner's property when she fell and injured herself. Because the child was engaged in recreational activities on the property and the land was undeveloped, the property owner was immune from liability under the Act. In describing the scene, we noted that "several other children

were playing in the area, engaging in various forms of recreational activity such as running, jumping, ice skating and sleigh riding." *Id.* at 3, 400 *A.*2d 485.

Here, Timothy was simply passing through the Kloses' yard to get to another property where he planned to play tag. Any running that he may have done while traversing the Kloses' property was not part of the game he intended to play once he arrived at his friend's house. The "recreational activity" was to occur on his friend's property, not on the Kloses' property.

Defendants also contend that the motion judge erred in finding that their property was not semi-rural within the purview of the Act. They assert that the Act does not require that the property "be completely isolated from civilization," *Labree, supra,* 195 *N.J.Super.* at 581–82, 481 *A.*2d 286.

In 1991, *N.J.S.A.* 2A:42A–3 was amended to provide immunity for premises "whether or not improved or maintained in a natural condition." *L.* 1991, c. 496 § 2. Defendants argue that the 1991 amendment and provision that the Act is to be liberally construed, *N.J.S.A.* 2A:42A–5.1, were in response to the overly restrictive interpretation of "premises" set forth in *Whitney v. Jersey Central Power & Light Co.,* 240 *N.J.Super.* 420, 573 *A.*2d 509 (App.Div.), *certif. denied,* 122 *N.J.* 376, 585 *A.*2d 381 (1990), as primarily undeveloped, open and expansive rural and semi-rural land. We recently rejected this argument in *Toogood v. St. Andrews at Valley Brook Condominium Ass'n,* 313 *N.J.Super.* 418, 423–26, 712 *A.*2d 1262 (App.Div.1998). In *Toogood,* we explained:

> *Whitney* was a case which unnecessarily restricted the immunity afforded to landowners of rural and semi-rural or open tracts of land by focusing on the activity and the presence or absence of improvements on the rural or semi-rural land. The 1991 amendments to the Act are clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits. Nothing in the language of the Act or its legislative history suggests these amendments were intended to radically alter the law of premises liability by extending immunity to suburban or urban landowners.
>
> [*Id.* at 425–26, 712 *A.*2d 1262.]

See also Benjamin v. Corcoran, 268 N.J.Super. 517, 634 A.2d 108 (App.Div.1993) (holding that the New Jersey Firemen's Home was not immune from liability under the Act for injuries sustained by a child who had been sledding on the grounds of the Home that consisted of an improved tract of land in a suburban area, and the property was surrounded by residential lots and contained two buildings, two homes, and a barn).

Defendants argue that the motion judge erred in interpreting the nature and character of their property. They assert that even the judge observed that Port Republic is a rural area and they further argue that their property is situated on one acre and contains a wishing well and a pond.

While the motion judge did acknowledge that Port Republic was a large rural area, he found that there were residential neighborhoods within it. The motion judge concluded:

> [T]his is absolutely a neighborhood area with houses in close proximity to the point where fences are put up to close off the houses, and the fence was down, the glass was there, and the plaintiff was traversing between houses to get to a third house, and this is where the incident occurred. I don't think the Landowner's Liability [Act] comes into play.

He therefore found that the subject neighborhood was a classic residential neighborhood where children traversed through backyards. There was no factual disputes as to the findings.

A judge must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46–2(c). Here, defendants' motion was based on their claim of entitlement to a judgment of immunity from suit under the Act. They did not dispute the facts, only the legal conclusion to be drawn therefrom. The judge concluded, as a matter of law, that the Act did not apply, a conclusion amply supported by the record before him.

Defendants contend that the motion judge erred in denying their motion for summary judgment, finding that a genuine issue

of material fact existed concerning whether Timothy, at age eleven, appreciated the risk of injury, and therefore, satisfied the infant-trespasser exception.

Traditionally, landowners owed "no duty of care other than to refrain from willful and wanton injury toward trespassers." *Diglio v. Jersey Cent, Power & Light Co.*, 39 *N.J.Super.* 140, 144, 120 A.2d 650 (App.Div.1956). However, the broad immunities which protected landowners from tort liability were weakened over time by reformulations and modifications of the principles which applied to the relationships between landowners and those who entered their property. *Vega by Muniz v. Piedilato*, 154 *N.J.* 496, 501–02, 713 A.2d 442 (1998). For example, as industrial society developed, there were heightened concerns about children being harmed from dangerous conditions of property. *Id.* at 502, 713 A.2d 442. That concern led to the formulation of section 339 of the *Restatement (Second) of Torts*, which imposed liability on landowners for physical injury sustained by an infant-trespasser. *Id.* at 503, 713 A.2d 442. In *Strang v. South Jersey Broadcasting Co.*, 9 *N.J.* 38, 45, 86 A.2d 777 (1952), New Jersey joined the growing number of states to follow section 339. *Vega, supra*, 154 *N.J.* at 503, 713 A.2d 442. That section now provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

[*Restatement (Second) of Torts* § 339 (1965).]

To prove a prima facie case under the infant-trespasser doctrine, plaintiff must establish each of those five elements. *Vega, supra,* 154 *N.J.* at 503, 713 *A.*2d 442. Courts should not apply section 339 mechanically; rather, they "must consider the unique factual setting of each case in deciding whether plaintiff has made a sufficient showing to raise a jury question for each of the five elements." *Ibid.* (citing *Blackburn v. Broad St. Baptist Church,* 305 *N.J.Super.* 541, 547, 702 *A.*2d 1331 (App.Div.1997)).

Defendants argue that plaintiffs failed to make a sufficient showing to raise a jury question under § 339(c) because Timothy had acknowledged that he knew that the piece of fence was down and that he could be cut by glass. In response, plaintiffs argue that although Timothy knew that the fence was down, he did not appreciate the risk that by running through it, he could fall and hurt himself. They further argue that the maturity of the child, the obviousness of the hazard, and whether Timothy was capable of understanding the risk of running were issues of fact.

Plaintiffs' position is correct. As the motion judge explained when referring to subsection (c):

I think you have to look at several factors: [t]he age, the conditions of the premises, how many times the kid went through it, the fact that 11–year–old kids run everywhere, the fact that they really don't appreciate risks the way adults would. I think they're all factors that go into the equation. And if you can't say that they did not discover or realize the risk, at least I think you say there's a fact issue on that for the trier.

The judge concluded that while the conditions of the other subsections were satisfied, there were factual issues for the trier of fact on subsection (c), dealing with the age of the child.

New Jersey does not have a "per se rule that a child above a certain age should be deemed to be aware of the risk." *Vega, supra,* 154 *N.J.* at 504, 713 *A.*2d 442. The *Vega* Court quoted a passage from our decision in *Hoff v. Natural Refining Products Co.,* 38 *N.J.Super.* 222, 118 *A.*2d 714 (App.Div.1955), wherein we explained the rationale for not arbitrarily fixing an age at which there is a duty to exercise some care:

[T]here is no place for the assumption in law that any particular child, in the absence of conclusive evidence thereof, has shed his immaturity at any particular age. In this domain the law may wisely find its guide in the general sense of mankind. Nor should there intrude the notion that at any given age the child "should know better." We are here necessarily dealing in pragmatics, not theories of improvement of child behavior. Close curtailment of liability by law will not dull the instinct of the child for carefree play. But the fair application of the rule of liability on a realistic basis will encourage the adoption of safety measures by industrial and other land occupiers and subserve the intent of the rule that the risk of foreseeable injuries to children be borne by those best able on the whole to prevent them.

[*Vega, supra,* 154 *N.J.* at 504, 713 *A.*2d 442.]

We have recognized that there is no precise age at which liability under section 339 no longer applies to a minor. *Ibid.; McColley v. Edison Corp. Ctr.,* 303 *N.J.Super.* 420, 427, 697 *A.*2d 149 (App.Div. 1997). Age "is but one factor, along with the nature and obviousness of the risk and the likelihood that the risk would be appreciated by a [child that age] under similar circumstances." *Id.* at 427–28, 697 *A.*2d 149. A child's appreciation of the risk is a matter of subjective analysis. *Vega, supra,* 154 *N.J.* at 507, 713 *A.*2d 442.

Defendants suggest that the undisputed facts demonstrated Timothy's appreciation of the risk of injury. They argue that no factfinder could have resolved the issue in plaintiffs' favor. Defendants point to Timothy's deposition testimony: (1) this was the normal path that he took when he went to Jared's house; (2) he had seen glass on the Klose property before the accident; (3) he was running when he crossed over the downed part of the fence; (4) he had seen glass in that vicinity prior to the accident; and (5) when his foot got caught and he knew he was going to fall, he saw the glass, so he covered his face with both hands "so it didn't shatter on [his] face."

Although in some jurisdictions the court alone determines whether under subsection (c) the child's appreciation of the risk eliminated any duty on the part of the landowner, in New Jersey that consideration is rarely a question of law. *Vega, supra,* 154 *N.J.* at 503–04, 713 *A.*2d 442. New Jersey views it as a jury question:

Realization of the risk involved means something more than mere awareness that "you could get hurt." It connotes appreciation of the danger involved rather than mere knowledge of the existence of the condition itself.... [I]f it is fairly debatable whether the child, considering his age and degree of immaturity, really comprehended the extent of the danger to which he was exposing himself, a jury question as to realization is presented.

[*Id.* at 504, 713 *A.*2d 442 (quoting *Haase v. North Hudson Scrap Iron Corp.*, 62 *N.J.* 263, 266, 300 *A.*2d 561 (1973)) (citing *Prosser & Keeton on Torts* § 59 (4th ed.1971)).]

Defendants argue that the availability of Timothy's deposition testimony made it possible for the motion judge to conduct a subjective analysis of the facts so as to enable him to determine whether Timothy appreciated the risk within the contemplation of subsection (c). They rely on *Coughlin v. U.S. Tool Co.*, 52 *N.J.Super.* 341, 145 *A.*2d 482 (App.Div.1958), *certif. denied*, 28 *N.J.* 527, 147 *A.*2d 305 (1959). That reliance is improper since in *Coughlin*, when the judge determined that no jury could have found that the child had not realized the risk of his conduct, the judge was ruling on the defendants' motion for involuntary dismissal after having considered the child's *trial* testimony. *Id.* at 343, 348, 145 *A.*2d 482.

The motion judge properly denied defendants' motion for summary judgment. There was a genuine issue of material fact concerning whether Timothy, at age eleven, appreciated the risk of injury, and therefore, satisfied the infant-trespasser doctrine.

At the conclusion of plaintiffs' case, defendants made a motion for involuntary dismissal on the basis that plaintiffs had again failed to establish sufficient proof under subsection (c). In denying the motion, Judge Himmelberger explained:

In plain English, I suppose that [the language in subsection (c) ] means that the plaintiff has to show that he doesn't, or didn't at the time anyway, understand the significance of the condition in terms of its capacity to injure him, not simply recognize the bare existence of the condition but to recognize that it had the potential to injure him under certain circumstances.

Timothy Mancuso when he testified said that at age 11 when this happened, he didn't appreciate the danger that confronted him in doing what he was doing. The jury might believe that; the jury might not believe that, but that's not for me to say at this point to think that they can't believe that. So the motion for judgment on that ground is denied.

Relying on rule enumerated in *Vega, supra,* 154 *N.J.* at 504, 713 *A.*2d 442, he properly denied the motion. Defendants' parsing of individual facts regarding Timothy's knowledge of the potential dangers of running and glass cutting him does not change the result. The establishment of these facts does not change the underlying conclusion that reasonable minds could differ as to whether Timothy appreciated the risk. The trial judge correctly denied defendants' motion for dismissal.

Finally, defendants argue that the trial judge erred by refusing their request for a jury charge on the Act. Having concluded that the Act was not applicable to the facts of this case, it was not error to deny such application.

Affirmed.