SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Andris Arias v. County of Bergen (A-45-24) (089642)**

**Argued October 9, 2025 -- Decided January 22, 2026**

**JUSTICE HOFFMAN, writing for a unanimous Court.**

In this appeal, the Court considers whether Bergen County is immunized from liability in tort, pursuant to the Landowner Liability Act (LLA), N.J.S.A. 2A:42A-2 to -10, for a rollerblading accident that occurred on a path in Van Saun County Park.

The 130-acre Van Saun Park features playgrounds, pavilions, picnic facilities, a dog park, a zoo, athletic fields, tennis courts, pathways, fishing ponds, and wooded areas. Its amenities are available to the public free of charge. In April 2021, plaintiff Andris Arias fell into a pothole on a paved pedestrian path while rollerblading in the park. Arias filed a complaint alleging negligence against the County, which owns and operates the park. The County filed a motion to dismiss the complaint, asserting immunity under the LLA. The trial court granted the County's motion, and the Appellate Division affirmed. See 479 N.J. Super. 268 (App. Div. 2024). The Court granted certification. 260 N.J. 223 (2025).

**HELD:** The LLA has grown -- along with New Jersey's own growth and development -- into a "liberally construed . . . inducement" for landowners to open "their property for sport and recreational activities" without "fear of liability." N.J.S.A. 2A:42A-5.1. Rollerblading, which is akin to "skating," is the type of "recreational activity" contemplated by the Legislature, see id. at -2, just as Van Saun Park is the type of open and expansive "premises," see id. at -3, for which this legislative grant of immunity is both intended and necessary. The LLA thus immunizes Bergen County for the accident at issue.

1. In 1962, the Legislature enacted the precursor to the LLA as an effort to protect rural landowners from liability for hunting and fishing on their property. In 1968, the Legislature replaced that Act with the LLA, which expanded immunity to the "owner, lessee or occupant of premises" for "sport and recreational activities." N.J.S.A. 2A:42A-3(a). The Legislature did not define "premises." Rather, the LLA introduced a broad array of exemplar "activities" that would satisfy the statute and immunize the landowner from liability, including "skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity." Id. at -2.

1

In 1991, the Legislature amended the LLA, broadening the scope of LLA immunity still further and making clear, for the first time, that the LLA "shall be liberally construed to serve as an inducement to the owners . . . of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." Id. at -5.1. The 1991 LLA also expanded immunity coverage to include "improved" or "commercial" premises and expanded the examples of covered activities to include "riding snowmobiles, all-terrain vehicles or dirt bikes." Id. at -2 to -3. (pp. 7-12)

2. In the first case construing the 1991 amendments, the Appellate Division held that the LLA was inapplicable to a rollerblading incident on a road within a residential condominium development. Toogood v. Saint Andrews at Valley Brook, 313 N.J. Super. 418, 420 (App. Div. 1998). Citing as a contrast a case involving an accident on a playground within a 35-acre park inside Fort Dix, Toogood clarified that the 1991 amendments did not broaden the definition of "premises" to include "owners and occupiers of suburban residential property." Id. at 425-26. It explained that the amendments were "clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits." Ibid. (pp. 12-14)

3. Like the Appellate Division, the Court sees no evidence of legislative intent to induce or immunize recreational activities in residential backyards or condominium developments, and it does not alter any prior guidance in this regard. But Van Saun Park -- although located in a densely populated area -- is the very type of open property the Legislature seeks to protect through the LLA, like the park inside Fort Dix. Prior to the 1991 amendments, the Court identified factors for courts to consider about the area in which a property is located to avoid taking "too expansive a view of the immunity conferred by the Legislature." Harrison v. Middlesex Water Co., 80 N.J. 391, 401 (1979). The Legislature, however, clarified in 1991 that a more expansive view of immunity should be taken going forward. The Court thus no longer finds the Harrison factors relevant to an analysis that -- to comport with the purpose expressed in N.J.S.A. 2A:42A-5.1 -- should be guided by whether the dominant character of the subject premises itself is of a type of open land conducive to engaging in sport and recreational activities. Holding that Van Saun Park is not a "premises" under the LLA would expose the County to liability and might discourage the opening of properties to the public for free -- consequences antithetical to the Legislature's purpose in enacting and broadening the LLA. (pp. 15-20)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.**

2

Andris Arias,

Plaintiff-Appellant,

v.

County of Bergen,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
479 N.J. Super. 268 (App. Div. 2024).

Argued
October 9, 2025

Decided
January 22, 2026

Alex S. Capozzi argued the cause for appellant (Brach Eichler, attorneys; Alex S. Capozzi, on the briefs).

David Mateen, Assistant County Counsel, argued the cause for respondent (Thomas J. Duch, Bergen County Counsel, attorney; David Mateen, on the brief).

Tyrone F. Sergio argued the cause for amicus curiae New Jersey Association for Justice (Britcher, Leone & Sergio, attorneys; Tyrone F. Sergio, of counsel, and E. Drew Britcher, on the brief).

Lawrence Bluestone argued the cause for amici curiae New Jersey Association of Counties and the County of Essex (Genova Burns, attorneys; Lawrence Bluestone,

Angelo J. Genova, and Celia S. Bosco, of counsel and on the brief).

JUSTICE HOFFMAN delivered the opinion of the Court.

At issue in this case is whether Bergen County is immunized from liability in tort, pursuant to the Landowner Liability Act (LLA), N.J.S.A. 2A:42A-2 to -10, for a rollerblading accident that occurred on a path in Van Saun County Park, a 130-acre park owned and operated by the County. We hold that the LLA immunizes Bergen County for this accident.

The LLA, which originated as an effort to protect rural landowners from liability for hunting and fishing on their property, has grown -- along with New Jersey's own growth and development -- into a "liberally construed . . . inducement" for landowners to open "their property for sport and recreational activities" without "fear of liability." N.J.S.A. 2A:42A-5.1. Rollerblading, which is akin to "skating," is the type of "recreational activity" contemplated by the Legislature, see id. at -2, just as Van Saun Park is the type of open and expansive "premises," see id. at -3, for which this legislative grant of immunity is both intended and necessary -- especially as growth and development compromise the availability of recreational properties in suburban and urban environments.

We therefore affirm the judgment of the Appellate Division.

2

I.

Van Saun Park was established in 1960. It is located within the suburban confines of Paramus, New Jersey, and is owned and operated by Bergen County. The 130-acre park features playgrounds, pavilions, picnic facilities, a dog park, a zoo, athletic fields, tennis courts, pathways, fishing ponds, and wooded areas. Its amenities are available to the public free of charge.

On April 24, 2021, plaintiff Andris Arias fell into a pothole on a paved pedestrian path while rollerblading in Van Saun Park. Arias asserts that her fall caused a permanent and debilitating neurological condition (complex regional pain syndrome), as well as spinal injuries requiring surgery.

Arias filed a complaint against the County, alleging negligence for failure to maintain the path or warn visitors of the pothole. In response, the County filed a motion to dismiss the complaint for failure to state a claim, pursuant to Rule 4:6-2(e), asserting immunity under the LLA.

The trial court granted the County's motion and dismissed the complaint without prejudice, holding that "there's no question here that the Landowner Liability Act applies to this County park." The trial court rejected Arias's contention that the buildings in the park made the LLA inapplicable, noting

3

that the LLA "expressly provides that it applies even if the premises is improved."

The Appellate Division affirmed the trial court's dismissal of Arias's complaint without prejudice. Arias v. County of Bergen, 479 N.J. Super. 268 (App. Div. 2024). After surveying relevant precedent, the appellate court found that immunity pursuant to the LLA, as amended in 1991, requires an analysis of whether the "premises" in question is the type of open property that would draw the public to engage in sport and recreational activities. Id. at 288. The appellate court found this question best answered by the "dominant character of the land" test articulated in Toogood v. Saint Andrews at Valley Brook Condominium Ass'n, 313 N.J. Super. 418, 425-26 (App. Div. 1998). Arias, 479 N.J. Super. at 288-89.

The Appellate Division found that test to be more appropriate than consideration of the four factors suggested by this Court -- prior to the LLA's 1991 amendments -- in Harrison v. Middlesex Water Co., 80 N.J. 391, 401 (1979), which focused on the property surrounding the "premises" in question, as opposed to the "dominant character" of the "premises" itself. Arias, 479 N.J. Super. at 288. Ultimately, the court held that "[t]he Park's dominant character as an open space for sport and recreational activities renders the Park the type of property entitled to the protections under the LLA." Id. at 289.

4

This Court granted Arias's petition for certification. 260 N.J. 223 (2025). We also granted leave to appear as amici curiae to the New Jersey Association of Counties and the County of Essex, which participated jointly. The New Jersey Association for Justice, which appeared as amicus before the Appellate Division, continued to participate in the appeal.

## II.

### A.

Arias argues that the Appellate Division in this case deviated from prior precedent, such as Harrison, that considered the nature of the surrounding area for purposes of determining whether the LLA applied. In so doing, Arias contends, the appellate court also misconstrued the effect of the 1991 amendments to the LLA and misapplied the more recent Appellate Division opinion in Toogood. Rather than relying upon Toogood's "dominant character of the land" test, Arias submits that the Appellate Division should have looked to the four factors discussed in Harrison and concluded that the LLA does not apply to Van Saun Park.

The New Jersey Association for Justice (NJAJ) joins Arias in requesting that this Court reverse the Appellate Division's decision. NJAJ argues that the LLA was designed to be interpreted narrowly and to protect recreational activities on rural or semi-rural lands, not "improved tract[s] of land" in a

5

"densely populated suburban residential neighborhood"; any other interpretation is, according to the NJAJ, inappropriate policymaking. NJAJ views the "dominant character of the land test" to be a departure from legislative intent and contends that an overbroad interpretation of the LLA runs the risk of disincentivizing property owners from keeping premises safe.

B.

The County argues that LLA immunity is justified because recreation is the dominant character of Van Saun Park and Arias was pursuing such a recreational activity on the day of her accident. The County submits that Toogood's "dominant character of the land" test is more akin to the liberal construction of the LLA mandated by the Legislature than a review of the four factors in Harrison, which focus on the surrounding environment rather than the premises in question.

Like the County, the New Jersey Association of Counties and the County of Essex (NJAC/Essex) jointly support affirmance of the Appellate Division's judgment. They argue that immunity for Van Saun Park is consistent with the Legislature's explicit mandate to construe the statute broadly and protect open lands throughout the state. NJAC/Essex contend that precluding immunity would discourage property owners from providing liberal access to open recreational spaces, in direct contravention of the intent and purpose of the

6

LLA. NJAC/Essex further argue that the need for immunity is heightened -- not negated -- by Van Saun Park's proximity to residential areas because it is within densely populated residential areas that the volume of recreational visitors is highest.

III.

As the parties' arguments reflect, the question of immunity in this case turns on the effect of statutory amendments on factors established in pre-amendment case law. We therefore begin by tracing the history and expansion of landowner immunity provisions.

A.

In 1962, the Legislature enacted the precursor to the LLA, which exempted any "landowner of agricultural lands or woodlands" from liability for injuries to anyone "hunting or fishing upon the landowner's property" absent "a deliberate or willful act on the part of such landowner." L. 1962, c. 107 (codified at N.J.S.A. 2A:42A-1 and repealed by L. 1968, c. 73, § 4). The 1962 Act protected "owners of rural or semi-rural lands, pointedly, agricultural and wooded tracts"; it "was not designed or intended to protect all landowners generally." Harrison, 80 N.J. at 398-99. As we noted in Harrison while surveying the history of the LLA, "[t]he Legislature apparently recognized the inability of the owners of such lands to control trespassers, or even to accord

7

reasonable safeguards to invitees, who hunted and fished on their property." Id. at 399.

In 1968, the Legislature repealed the 1962 Act and replaced it with the LLA, L. 1968, c. 73 (codified at N.J.S.A. 2A:42A-2 to -5), which expanded immunity to the "owner, lessee or occupant of premises" for "sport and recreational activities." N.J.S.A. 2A:42A-3(a). The Legislature did not define "premises" for these purposes. Rather, the LLA introduced a broad array of exemplar "activities" that would satisfy the statute and immunize the landowner from liability: "hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity." Id. at -2.

The scope and intent of this new statute were considered in a trio of cases decided in the decade following the LLA's enactment.

B.

In Boileau v. De Cecco, we summarily affirmed the Appellate Division's holding that the LLA did not apply to a diving accident in a backyard swimming pool in a suburban neighborhood. 65 N.J. 234 (1974). The appellate court held "that the legislative change of the term 'agricultural lands or woodlands' to 'premises'" was "intended to better define, and perhaps

8

somewhat broaden, the protected class originally specified" but "was not intended to enlarge the protected class of landowners to homeowners in suburbia," i.e., "someone's backyard." Boileau v. De Cecco, 125 N.J. Super. 263, 267 (App. Div. 1973).

Next, in Harrison, we considered whether the LLA immunized a municipal utility for a drowning that occurred in a ninety-four-acre reservoir, used by the public for swimming and ice skating, that was located "on an improved tract situated in a highly populated suburban community . . . [and] surrounded by both private homes as well as public recreational facilities." 80 N.J. at 394-95, 401-02. We affirmed the importance of identifying "the underlying intent and the overriding purpose of the Legislature" in order to give meaning to undefined statutory terms, such as "premises" in this statute; we found in this instance, however, that "[t]he background of the [LLA] . . . is not rich." Id. at 398.

This Court, therefore, was reluctant to "attribute to the Legislature . . . an intent that the [LLA] be accorded a broad application," particularly because immunity statutes generally "should be given narrow range." Id. at 401. We nevertheless made clear that the public policy undergirding the LLA is to "encourage" landowners "to keep their lands in a natural, open and environmentally wholesome state." Id. at 400. We found this to be "an

9

important policy in view of the substantial and seemingly relentless shrinkage and disappearance of such land areas from the face of our State." Ibid.

In an effort to balance those interests and principles, this Court identified four factors that reviewing courts should not "disregard" in applying the LLA: "the use for which the land is zoned, the nature of the community in which it is located, its relative isolation from densely populated neighborhoods, as well as its general accessibility to the public at large." Id. at 401. Because we could not identify any intent on the part of the Legislature to immunize "all landholders from liability for injuries incurred during the course of outdoor recreational activity on their property, particularly with respect to improved lands freely used by the general public . . . in urban or suburban areas," we found that the land at issue -- "an improved tract situated in a highly populated suburban community" -- was not subject to immunity. Id. at 401-02.

Approximately a decade later, the Appellate Division in Whitney v. Jersey Central Power & Light Co. held that the LLA did not immunize a public utility from liability for an ATV accident that occurred on a roadway used to maintain the utility's electrical lines that ran through a wildlife preserve. 240 N.J. Super. 420, 421-22 (App. Div. 1990). The appellate court found that such a "roadway . . . is not the kind of 'undeveloped, open and expansive rural [or]

10

semi rural' property[] protected by the [LLA]," especially considering that "the roadway did not appear to be in a natural condition." Id. at 424 (first alteration in original) (quoting Harrison, 80 N.J. at 400). Accordingly, the court found that LLA immunity does not "extend[] to an improved and regularly maintained property located in a sparsely populated area" and "used in the conduct of a commercial enterprise." Id. at 425.

C.

Almost immediately thereafter, and arguably in response to Whitney, see Toogood, 313 N.J. Super. at 424, the Legislature enacted L. 1991, c. 496, which broadened the scope of LLA immunity. The version of the LLA as amended in 1991 is at issue in this case. Significantly, the Legislature made clear, for the first time, that the LLA "shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." N.J.S.A. 2A:42A-5.1 (emphasis added). The 1991 LLA also expanded immunity coverage to include "improved" or "commercial" premises and expanded the examples of covered activities to include "riding snowmobiles, all-terrain vehicles or dirt bikes." Id. at -2 to -3.

The statute currently provides:

11

An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, and whether or not improved or maintained in a natural condition, or used as part of a commercial enterprise, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes.

[Id. at -3(a).]

And it currently defines "[s]port and recreational activities" to include:

hunting; fishing; trapping; horseback riding; training of dogs; hiking; camping; picnicking; swimming; skating; skiing; sledding; tobogganing; operating or riding snowmobiles, all-terrain vehicles or dirt bikes; and any other outdoor sport, game and recreational activity including practice and instruction in any of these activities.

[Id. at -2.]

D.

In Toogood, the first case construing the 1991 amendments, the Appellate Division held that the LLA was inapplicable to a rollerblading incident on a road within a residential condominium development. 313 N.J. Super. at 420. The appellate court contrasted these facts with those in Weber v. United States, 991 F. Supp. 694 (D.N.J. 1998), where an accident had occurred on a swing set in a playground within a thirty-five-acre park inside Fort Dix. The appellate court cited, with favor, the district court's holding in

12

Weber that the LLA applied because "[m]aintenance of an open tract of land and allowance of access by the general public for passive or active recreational purposes are precisely the types of conduct the Legislature seeks to encourage." Toogood, 313 N.J. Super. at 425.

That said, the Appellate Division clarified that even though the 1991 amendments were in response to Whitney, which had "unnecessarily restricted immunity afforded to landowners of . . . open tracts of land," the Legislature's expansion of immunity was not intended to broaden the definition of "premises" to include "owners and occupiers of suburban residential property" such as a condominium development. Id. at 425-26. According to the appellate court, the 1991 amendments were "clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits." Ibid.

Consistent with Toogood, the Appellate Division in Mancuso v. Klose declined to apply the LLA to injuries incurred when an eleven-year-old tripped over a fence separating his yard from his neighbor's yard. 322 N.J. Super. 289, 293-94 (App. Div. 1999). The appellate court first held that "passing through" a neighbor's property to join friends on another property for a game of "tag" was not the type of recreational activity covered by the LLA. Id. at 296. Second, the Appellate Division agreed with the trial court's conclusion

13

that a residential "neighborhood area with houses in close proximity to the point where fences are put up to close off the houses" is not the type of "premises" that is subject to the LLA. Id. at 297.

Against this backdrop of statutory enactments and interpretive case law, we now consider whether the LLA encompasses Van Saun Park.

IV.

In applying the LLA, we rely on familiar principles of statutory interpretation to give effect to the Legislature's intent. State v. A.M., 252 N.J. 432, 450 (2023). We begin by looking to the statute's plain language, ibid., and "presume that the Legislature intended the words that it chose and the plain and ordinary meaning ascribed to those words" unless the statute includes specific definitions, Paff v. Galloway Township, 229 N.J. 340, 353 (2017); accord N.J.S.A. 1:1-1.

As discussed above, the LLA immunizes liability for "sport and recreational activities" on "premises" in an "improved . . . condition." N.J.S.A. 2A:42A-2 to -3(a). There can be no doubt that rollerblading falls among the covered "activities," which include "skating . . . and any other outdoor sport, game and recreational activity." Id. at -2. Arias does not contest that she was engaged in a sport or recreational activity under the statute. The 1991 amendments also made clear that rollerblading on a paved

14

path, i.e., an "improved . . . condition," is protected within the scope of immunity.  See id. at -3(a).

The more challenging question is whether Van Saun Park is a "premises" pursuant to a statute that provides no express definition for this term.  See id. at -2 to -3.  The LLA provides limited guidance in this regard.  It is clear from the statute that a "premises" must be a property where "sport and recreational activities," as defined under N.J.S.A. 2A:42A-2, can be conducted, but the long list of covered activities followed by the catch-all category of "any other outdoor sport, game and recreational activity" leaves open a wide array of possibilities.  We find additional guidance in the precedent analyzing the LLA.

The Appellate Division has consistently held, both before and after the 1991 amendments, that the LLA does not apply to residential land in a suburban setting:  a backyard swimming pool in Boileau, 125 N.J. Super. at 266-67; a fence that separates backyards in Mancuso, 322 N.J. Super. at 293; and a road within a residential condominium development in Toogood, 313 N.J. Super. at 420.  We likewise see no evidence of legislative intent to induce or immunize recreational activities in such residential backyards or condominium developments -- and we do not alter any prior guidance in this regard.

15

But Van Saun Park -- a 130-acre partially wooded park onto which the public is invited, free of charge, to participate in numerous sport and recreational activities, including rollerblading -- is distinct from the residential properties at issue in Boileau, Mancuso, and Toogood. Even though it is located in a densely populated suburban, rather than rural, area, the park provides the same expansive and accessible property to which people are drawn for outdoor sport and recreation. It is this very type of open property that the Legislature seeks to maintain in New Jersey and protect through the LLA.

It is here that we find the Appellate Division's post-1991-amendments analysis in Toogood to be particularly instructive. 313 N.J. Super. at 424-27. In finding that a road within a condominium development was not the type of "premises" that the Legislature sought to protect, the court in Toogood juxtaposed a residential suburban road with a playground inside a thirty-five-acre park in the Fort Dix Military Reservation and held that "[m]aintenance of an open tract of land and allowance of access by the general public for passive or active recreational purposes are precisely the types of conduct the Legislature seeks to encourage." Id. at 425-26. That same type of recreational "conduct" on the same type of "premises" -- rollerblading in the 130-acre Van Saun Park -- is present here.

16

In reaching its holding, the <u>Toogood</u> court emphasized that the 1991 amendments were "clearly designed to focus the inquiry on the dominant character of the land and to account for the evolving types of activities considered recreational pursuits." <u>Ibid.</u> <u>Harrison</u>, relying upon the notion that the legislative grant of immunity should be construed "narrow[ly]," laid out a series of factors that, if "disregard[ed]," might lead the courts to take "too expansive a view of the immunity conferred by the Legislature." 80 N.J. at 401. The Legislature, however, clarified in 1991 that a more expansive view of immunity <u>should</u> be taken going forward. <u>See</u> N.J.S.A. 2A:42A-5.1. In so doing, the Legislature has altered our perspective on the four factors that the pre-1991 <u>Harrison</u> opinion cautioned us not to "disregard": the zoning of the land, its surrounding community, its isolation, and its accessibility to the public. <u>See</u> 80 N.J. Super. at 401. We no longer find those factors to be particularly relevant, let alone determinative, in the context of an analysis that should be guided by whether the "dominant character" of the subject "premises" itself is of a type of open land conducive to engaging in sport and recreational activities.[1]

---

[1] We do not foreclose the possibility that one of the <u>Harrison</u> factors may have a bearing on the fact-specific analysis required under the LLA. For instance, it is conceivable that a residential property could be surrounded by open lands conducive to the type of sport or recreational activity incentivized by the LLA,

17

For the <u>Toogood</u> court, the thirty-five-acre park in <u>Weber</u> was subject to immunity because it was "open" space intended to be used for sport or recreational purposes. 313 N.J. Super. at 425 (citing <u>Weber</u>, 991 F. Supp. at 695). The same is true for Van Saun Park. That notion of "open" space has its roots in the initial articulation of landowner liability but, as we made clear in <u>Harrison</u>, is subject to change as New Jersey, itself, changes. 80 N.J. at 400 (identifying the "importan[ce] . . . of the substantial and seemingly relentless shrinkage and disappearance" of "open" spaces for purposes of interpreting and applying the LLA). And New Jersey has changed substantially over the half century since the first iteration of the LLA and the more than four decades since we decided <u>Harrison</u>. It is, as the Appellate Division here found, "axiomatic that New Jersey's open spaces are diminishing rapidly." <u>Arias</u>, 479 N.J. Super. at 285. In the context of a suburban setting such as Paramus, an open and expansive 130-acre park in which the public is invited to participate in sport and recreational activities is of the type and character of "premises" for which immunity protection is both intended and appropriate pursuant to the LLA.

---

and that such surrounding lands may impact the perspective toward the residential property in question.

18

Such treatment is consistent with the express intent of the 1991 amendments. Whereas, before 1991, we could not "ascribe a purpose on the part of the Legislature to sanction an expansive application of the operative statute," Harrison, 80 N.J. at 403, after 1991, we now find such a purpose to be express, N.J.S.A. 2A:42A-5.1; accord Assemb. Judiciary L. & Pub. Safety Comm. Statement to A. 4678 (Dec. 5, 1991) (the LLA "shall be liberally construed to serve as an inducement to permit persons to use the property for recreational activities"). We find that an analysis focused on the "dominant character" of the land comports with that express purpose.

Finally, we are concerned that holding Van Saun Park is not a "premises" under the LLA would expose the County to liability and might discourage counties and municipalities from opening existing or new properties to the public for free. As recognized by the LLA and cases like Harrison, there is inherent difficulty in monitoring open and expansive land to prevent trespassers or guarantee the safety of the entire property. See, e.g., Harrison, 80 N.J. at 399. That is no less true for a 130-acre park. If the park was not covered by the LLA, the costs of potential liability would likely be passed on to the taxpayer, directly through increased taxes or indirectly through decreased or eliminated services. To avoid such risks and costs, municipalities might close parks, avoid opening new ones, or begin charging

19

admission to facilities such as Van Saun Park.  Such consequences are antithetical to the Legislature's express purpose in enacting and subsequently broadening the LLA.

V.

The above survey of precedent and law in the context of landowner immunity for sport and recreational activities is instructive:  what began as narrow immunity for hunting and fishing in forested lands has evolved into a broader immunity that is intended to be both "liberally construed" and to "induce[]" landowners to create or maintain open lands for a broad and non-exclusive array of "sport and recreational activities" without "fear of liability." N.J.S.A. 2A:42A-5.1.  Not surprisingly, this evolution has occurred in a state in which such open lands and the recreational opportunities they provide are becoming increasingly scarce and in need of protection.  Recognizing that Van Saun Park is the type of "premises" that the Legislature intended to protect and preserve -- and that its dominant character is that of open and expansive land onto which the public is invited to recreate -- is consistent with legislative intent as well as the above-surveyed precedent.

For the foregoing reasons, we affirm the judgment of the Appellate Division.

20

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.