178 N.J. Super. 591 (1981)
429 A.2d 1074
ALAYNE C. LAUBER, PLAINTIFF-RESPONDENT,
v.
JACK D. NARBUT, DEFENDANT-RESPONDENT, AND CITY OF MILLVILLE, DEFENDANT-APPELLANT, AND GEORGE F. PETTINOS, INC., DEFENDANT. JACK D. NARBUT, PLAINTIFF-RESPONDENT,
v.
CITY OF MILLVILLE, DEFENDANT-APPELLANT, AND GEORGE F. PETTINOS, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1981.
Decided April 23, 1981.
*592 Before Judges SEIDMAN, ANTELL and LANE.
John P. Morris argued the cause for defendant-appellant City of Millville (Horuvitz, Perlow & Morris, attorneys).
Gerald M. Eisenstat argued the cause for plaintiffs-respondents Alayne C. Lauber and Jack D. Narbut (Shapiro, Eisenstat, Capizola, O'Neill & Gabage, attorneys for plaintiff-respondent Alayne C. Lauber; Vincent Pancari, attorney for plaintiff-respondent Jack D. Narbut; Darrell Fineman and Mr. Pancari on the brief).
*593 Michael A. Orlando argued the cause for defendant-respondent Jack D. Narbut (Orlando & Slimm, attorneys).
PER CURIAM.
This appeal by the City of Millville arises from consolidated automobile, negligence, personal injury actions instituted by Alayne C. Lauber and Jack D. Narbut. Both were injured on a tract of land leased to the city by George F. Pettinos, Inc., when a jeep driven by Narbut, in which Ms. Lauber and two other persons were riding as passengers, struck a steel cable strung along posts. Narbut sought damages from the city and the Pettinos company; Ms. Lauber sued Narbut in addition to those defendants. At the opening of the trial Pettinos' unopposed motion for dismissal was granted. The jury found Narbut 20% at fault; the city, 80%. Ms. Lauber was awarded damages against Narbut and the city in the amount of $70,000; Narbut's award against the city was $30,000. In the case of Ms. Lauber, the judgment that was entered, inclusive of interest, allocated $56,000 to the city and $17,116.69 to Narbut. Why the judgment was split in that manner is not explained. Narbut's judgment, reflecting a reduction to the extent of his percentage of fault, was in the amount of $24,000. He has not appealed.
The city contends that (1) its motion for involuntary dismissal and post-trial motions for judgment n.o.v. and for a new trial, based upon the Landowners Liability Act, N.J.S.A. 2A:42A-2 et seq., were erroneously denied; (2) the city is immune from liability under the Tort Claims Act, N.J.S.A. 59:4-8, in light of the trial judge's finding on the post-trial motions that the premises were unimproved;[1] (3) evidence of the cost of future prosthetic devices in the case of the female plaintiff should have been barred under the New Jersey Automobile Reform Act, N.J.S.A. 39:6A-12 and 13.1(a), and (4) the trial judge erred in *594 refusing to give a curative instruction to the jury concerning a driver's duties "as well as its mistaken description of the facts of the litigation."
The central issue to be resolved is whether, on the facts here present, the city was entitled to immunity from liability under the Landowners Liability Act. If it is determined that there was such immunity, then the judgments against the city must be reversed, irrespective of the Tort Claims Act. Trimblett v. State, 156 N.J. Super. 291 (App.Div. 1978). In that event, the remaining contentions would be moot.
The Landowners Liability Act provides in pertinent part:
Except as provided in section 3 [N.J.S.A. 2A:42A-4] of this act:
a. An owner, lessee or occupant of premises, whether or not posted as provided in section 23:7-7 of the Revised Statutes, owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes; .... [N.J.S.A. 2A:42A-3].
The term "sport and recreational activities" is defined as "hunting, fishing, trapping, horseback riding, training of dogs, hiking, camping, picnicking, swimming, skating, skiing, sledding, tobogganing and any other outdoor sport, game and recreational activity...." N.J.S.A. 2A:42A-2.
The city's motion for a judgment of involuntary dismissal, made at the close of plaintiff's case, was on the ground, among others, that the statute extended immunity in that plaintiffs were engaged in a recreational activity at the time of the occurrence. The trial judge denied the motion, holding that the city was not entitled to immunity because the activity, as a matter of law, was not recreational. Subsequently, on its motion for judgment n.o.v. or a new trial, the city restated its previous position. Relying on the holding in Harrison v. Middlesex Water Co., 80 N.J. 391 (1979), decided after the trial but prior to argument on the motion, that the statute must be strictly construed and not extended beyond its intended need, plaintiffs again argued that they were not engaged in a recreational activity within the meaning of the statute but were *595 merely out for a ride in the country on the day in question. Adhering to his prior ruling, with respect to the nature of the activity, the trial judge went on to hold for "appellate purposes" that the premises would otherwise have been of the type to which the act would apply.
To that extent, we are in accord. Unlike the situation in Harrison, where a drowning occurred on the water company's unfenced reservoir tract that had long been used by the public for swimming and ice-skating and was surrounded by a heavily populated area containing a high school, athletic fields, social clubs and private homes, the tract here, leased to the city for the purpose of erecting and operating a police training and practice pistol range, was described by the trial judge, except for the range, as "wholly unimproved; the surrounding area is mostly woodland." The tract, consisting of approximately 35 acres, was rectangular, with a frontage of 1150 feet along Silver Run Road and a depth of 1350 feet. A dirt access road led from Silver Run Road to a small cleared area on which the pistol range was maintained. Enclosing the range on two sides was a steel cable suspended from wooden posts. The trial judge correctly concluded that the premises were "clearly located in a rural and woodland area where the activities of people thereon and going thereto cannot be controlled and regulated." But we are of the view that the trial judge erred in holding that plaintiffs were not engaged in a recreational activity at the time of the mishap.
Relevant to the issue of whether plaintiffs were simply out for a drive, as they contend, or whether they went to the tract to engage in a recreational activity within the meaning of the statute is the fact, acknowledged by all, that persons used the area surrounding the pistol range for walking, bicycling and, particularly, motorcycling and jeep-riding up and down the adjacent hills. In response to the city's contention that plaintiffs and their companions were on the premises for the purpose of "four-wheeling," the trial judge said:
... If by "four-wheeling" is meant racing a four-wheel vehicle, or running it up and down a hill or other cavorting with a vehicle on four wheels, then it would *596 appear obvious that such activity would constitute a recreational activity as defined by the Act. On the other hand, if that term is used to denote riding in a vehicle with four wheels and nothing else, it would not constitute a recreational activity.
In this case the only testimony is that the plaintiffs were out for a ride in the rural countryside and there was nothing from which a contrary inference could be drawn.
The trial judge was mistaken in his concept of what plaintiffs and their companions intended to do on the premises. The excursion took place on December 22, 1974. Ms. Lauber was familiar with the pistol range area, having ridden there in the past on "wood bikes." On the day in question, she and her sister Suzanne, who was home from school for the holidays, decided to go for a jeep ride with Narbut and his friend Robert Fallows. According to Narbut, he had spoken to Ms. Lauber and her sister about "four wheeling" through the woods, and Suzanne said she would like to try it. They drove onto the tract along the dirt access road to a point where the woodland opened up into an open field, on which the pistol range was situated. There were hills in the background. They were driving across the range to go up a hill when the accident occurred. Narbut said that it was evident to him from tire tracks that the hills were being utilized for "four wheeling" purposes and by motorcycles and dune buggies. As Fallows put it, "That's what we were out there for, to climb the hills." We conclude from plaintiffs' own proofs that they and their companions were on the premises not just "for a ride in the rural countryside," but with the express purpose of engaging in the sport of riding the jeep up and down the hills, an activity that plainly was recreational.
Narbut argues, however, that even if the activity were recreational, the cable constituted an artificial hazard and the Legislature did not intend to grant immunity for injuries resulting from such conditions superimposed on the land by the occupier of the premises. It should be noted that the cable with which the jeep collided was strung from posts and served as a fence or barrier to prevent damage to the pistol range. If the cable, *597 which was directly related to the city's use of the range area, was a hazard, the answer is found in the Landowners Liability Act, for an occupant owes no duty to keep the premises safe for entry or use by others for sport and recreational activities, or to give warning of any "hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes." N.J.S.A. 2A:42A-3(a). Diodato v. Camden Cty. Park Comm'n, 162 N.J. Super. 275 (Law Div. 1978), and Scheck v. Houdaille Constr. Materials, Inc., 121 N.J. Super. 335 (Law Div. 1972), cited by plaintiffs, are plainly distinguishable on their facts.
We also find no merit in plaintiffs' contention that the "willful conduct of the defendant City of Millville in constructing the dangerous condition that proximately caused this accident, places this case in the exception to the Landowners Liability Act as held in Krevics [v. Ayars, 141 N.J. Super. 511 (Law Div. 1976)]...." The reference is to § 4 of the act which provides in pertinent part that immunity is not extended "[f]or willful or malicious failure to guard, or warn against, a dangerous condition, use, structure or activity; ...." [Emphasis supplied.] But the facts in Krevics, which in any event is not binding on us, and which was decided by the same judge who presided at this trial, are markedly different from those here involved. In that case defendant had caused a cable to be placed across a motorbike trail on his property with the express intent of keeping others off the trail. Plaintiff, who had used the trail before, was injured when his motorbike struck the cable. The trial judge denied defendant's motion for summary judgment, holding, among other things, that defendant would be required to respond in damages if he willfully or maliciously erected a hazardous condition and plaintiff was injured as a result thereof. Krevics v. Ayars, supra, 141 N.J. Super. at 517. There is no evidence in this case from which it could be inferred that the cable, if hazardous, was erected "willfully or maliciously" in order to bar access to or use of the adjoining hills.
*598 We conclude, therefore, that the city was immune from liability to plaintiffs under N.J.S.A. 2A:42A-3(a), and that the judgments against the city must be reversed. For that reason, we need not consider the remaining arguments advanced by the city.
The judgments entered in favor of plaintiffs Alayne C. Lauber and Jack D. Narbut and against defendant City of Millville are reversed. We express no opinion on the correctness of the judgment entered in favor of plaintiff Alayne C. Lauber insofar as it apportioned the damages between the two defendants.
NOTES
[1] We decline to consider this issue, raised for the first time on appeal. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). The city concededly did not claim immunity under the Tort Claims Act at the trial.