NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2371-22

BRYAN CALLAHAN,

     Plaintiff-Appellant,

v.

TRI-BOROUGH SAND AND
STONE, EUREKA STONE
QUARRY, INC., and
JAMES D. MORRISSEY, INC.,

     Defendants-Respondents.

**APPROVED FOR PUBLICATION**

**May 20, 2024**

**APPELLATE DIVISION**

Submitted February 27, 2024 – Decided May 20, 2024

Before Judges Sumners, Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0472-22.

Patrick J. Finn (The Myers Firm, Attorneys at Law, PC) attorney for appellant.

Wilson Elser Moskowitz Edelman & Dicker, LLP, attorneys for respondent (John Thomas Donovan and Caroline Stephanie Vahey, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

In this case of first impression, the court considers the limitations on property owners' liability under N.J.S.A. 39:3C-18, when certain classes of motor vehicles are operated on its premises. Plaintiff Bryan Callahan claimed he sustained severe injuries when he struck a steel cable while riding his dirt bike on the quarry grounds owned by defendants Tri-Borough Sand and Stone, Eureka Stone Quarry, Inc., and James D. Morrissey, Inc.[1] The cable was part of the machinery used in dredging the quarry. The incident occurred on a Sunday afternoon, while the quarry was closed.

In an oral decision, the motion judge dismissed plaintiff's complaint on summary judgment, concluding defendants were immune from liability under N.J.S.A. 39:3C-18 because plaintiff lacked express consent to operate his dirt bike on their property. The judge summarily denied as moot plaintiff's motion for leave to file an amended complaint to assert allegations of willful and wanton misconduct.

Plaintiff now appeals from the March 3, 2023 memorializing orders. Comparing N.J.S.A. 39:3C-18 to a similar statute under the Landowner's

---

[1] In their responding brief, defendants explained "Tri-Borough is the name of the quarry at issue in this case[,] which is owned and operated by Eureka." Although Morrissey is not an owner or operator of the quarry, all parties joined in Eureka's summary judgment motion. For consistency with defendants' references, we refer to defendants, collectively, as owners of the quarry.

Liability Act (LLA), N.J.S.A. 2A:42A-1 to -10, we conclude defendants did not act willfully to create a hazardous condition on their property by failing to lower the steel cable, within the meaning of N.J.S.A. 2C:39-18. Because we hold summary judgment was warranted under N.J.S.A. 39:3C-18, we conclude the motion judge properly denied plaintiff's motion for leave to amend his complaint.

I.

We summarize the pertinent facts from the motion record in a light most favorable to plaintiff as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

At deposition, plaintiff stated prior to the incident, he operated his dirt bike on defendants' property many times and had always checked for hazards "on the trails" but not along "the open sand quarry" or "open pit where you can see from one side of the pit to the other . . . . That was always kind of like a free for all." On the day of the incident, plaintiff and his friend rode their dirt bikes on defendants' property for "a few hours" before they struck the steel cable, which was elevated about three feet from the ground. Plaintiff estimated he was traveling between thirty-five and forty miles per hour at the time of impact. The incident occurred along a "straight pass," where riders were known to "rip their

3

bikes as fast as [they] could."  Plaintiff had not checked for hazards in that area prior to his fall.

Plaintiff acknowledged he "never received the express consent of the owner to enter the property."  In her affidavit filed in opposition to defendants' summary judgment motion, plaintiff's mother asserted she had operated all-terrain vehicles (ATV)s on defendants' property in the 1990s, along with "hundreds" of other riders and never was told "riding was not permitted."

Eureka's Environmental Safety Director, James Furey, testified about defendants' dredging operation at the property and the purpose of the steel cable in the dredging process.  Specifically, "the dredge is [situated] in the water . . . attached to the cable, which is anchored by two buckets on either [shore] of the water" and "the dredge moves along that cable through the water" to dredge the sand.  The anchor buckets are "the size of a small car."  According to Furey, "the dredge operates daily" and after hours, the anchor buckets and cable are not removed.  Furey acknowledged "the cable may come off the ground when the ladder[2] is out of the water" but he did not know whether that process occurred when the quarry was closed because that was the operator's decision.

---

[2]  We glean from the record "ladder" is the colloquial term for the suction hose located on the dredge.

A-2371-22

Furey confirmed there were no warning signs to alert people about the cable. Further, "only employees are allowed in that area, so they're aware of the cable through their training." Furey clarified the cable was not present to deter trespassing. Furey also asserted defendants never provided express permission for any individual to ride a dirt bike on the property.

About two months prior to the close of discovery, defendants moved for the summary judgment dismissal of plaintiff's complaint, asserting they never expressly authorized plaintiff to operate his dirt bike on their property and, as such, they were immune from liability under N.J.S.A. 39:3C-18. Plaintiff opposed the motion and moved for leave to file an amended complaint to assert defendants created a hazardous condition on their property, which constituted "willful and wanton misconduct." Accordingly, plaintiff claimed defendants were not entitled to immunity under the statute.

Immediately following oral argument, the judge granted defendants' motion. Following extensive colloquy with counsel, the judge succinctly concluded defendants did not erect the cable "to deter or harm the dirt b[ike] riders." Rather, the cable "ha[d] a separate and distinct business purpose." The judge also noted the Legislature intended "to give extra protection to landowners

5

in regard to dirt b[ike] riders." In view of his decision, the judge summarily denied plaintiff's motion as moot. This appeal followed.

## II.

### A.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff, as the non-moving party, nonetheless entitle defendants to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill, 142 N.J. at 540; see also R. 4:46-2(c). We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

Regulations under Title 39 differentiate between certain classes of motor vehicles. Chapter 3C of Title 39 regulates the operation of snow mobiles, ATVs, and dirt bikes (Chapter 3C), N.J.S.A. 39:3C-1 to -36. Relevant here, N.J.S.A. 39:3C-18 limits liability when such vehicles are operated on the property of others:

> a. No person shall operate a snowmobile, [ATV],
> or dirt bike on the property of another without receiving

6

the consent of the owner of the property and the person who has a contractual right to the use of the property.

      b.    No person shall continue to operate a snowmobile, [ATV], or dirt bike on the property of another after consent, as provided in subsection a. above, has been withdrawn.

      c.  No owner of real property and no person or entity having a contractual right to the use of real property, no matter where the property is situate[d] in this State, shall assume responsibility or incur liability for any injury or damage to an owner, operator, or occupant of a snowmobile, [ATV], or dirt bike if the injury or damage occurs during, or arises out of the operation or use of, the snowmobile, [ATV], or dirt bike unless: (1) the operation or use is with the express consent of the owner and contractual user of the property, and (2) the provisions of P.L.1968, c. 73 (C.2A:42A-2 et seq.) or P.L.1985, c. 431 (C.2A:42A-6 et seq.) do not limit liability. <u>This subsection shall not limit the liability which would otherwise exist for the willful or malicious creation of a hazardous condition.</u>

[(Emphasis added).]

Plaintiff contends defendants knew for decades "non-employees rode ATVs throughout the property" but nonetheless created a hazardous condition by failing to lower the steel cable, thereby constituting willful and wanton misconduct under N.J.S.A. 39:3C-18. Defendants counter plaintiff did not allege his willful and wanton theory until he was served with their summary judgment motion. Regardless, defendants claim the cable was erected for a

legitimate business purpose – not to prevent dirt bike riders from riding through the area.

The parties cite no authority under N.J.S.A. 39:3C-18 to substantiate their claims, nor has our research revealed any such authority. Instead, the parties cite the Landowner's Liability Act (LLA), N.J.S.A. 2A:42A-1 to -10, and the caselaw interpreting the act. Because the statutes are similar, we are persuaded LLA caselaw is applicable here.

In essence, the LLA was intended to shield from liability private owners of rural or semi-rural lands used by the public for sport and recreational activities. See Harrison v. Middlesex Water Co., 80 N.J. 391, 399-401 (1979). Thus, such landowners "owe[] no duty to keep the premises safe for entry or use by others for sport and recreational activities." N.J.S.A. 2A:42A-3(a). Nor must they "give warning of any hazardous condition of the land or in connection with the use of any structure or by reason of any activity on such premises to persons entering for such purposes." Ibid. Unlike N.J.S.A. 39:3C-18, immunity applies, even if the owner expressly permits entry by the public. N.J.S.A. 2A:42A-3(b).

Similar to Chapter 3C, the LLA does not shield landowners from liability for certain willful or malicious acts or where the owners gave permission to use the premises:

This act shall not limit the liability which would otherwise exist:

a. For willful or malicious failure to guard, or to warn against, a dangerous condition, use, structure or activity; or

b. For injury suffered in any case where permission to engage in sport or recreational activity on the premises was granted for a consideration . . . .

[N.J.S.A. 2A:42A-4.]

However, neither Chapter 3C nor the LLA define "malicious" or "willful." In Krevics v. Ayars, 141 N.J. Super. 511 (Law Div. 1976), while not attempting to define the terms, the trial court denied the defendant's summary judgment motion in light of evidence that the defendant "caused or consented to the placement of a cable across the motorbike trail" that had been used for several years on his eleven-acre, undeveloped woodland tract in Salem County. Id. at 514. There were no warning signs and, at dusk, the cable was difficult to see. Ibid. The plaintiff came into contact with the cable and suffered serious injuries. Ibid. The court found the defendant was not immune from liability under the LLA because "[t]he hazardous situation was created by [the] defendant. The erection of the cable was certainly a willful act. In view of [the] defendant's knowledge of the use of the motorbike trail, and considering the type of hazard

9

erected, [the] defendant's action may even be construed as malicious." Id. at 516.

We reached a different conclusion in another case decided under the LLA. Lauber v. Narbut, 178 N.J. Super. 591 (App. Div. 1981). Relevant here, the plaintiff in Lauber was injured while riding as a passenger in a jeep, which "struck a steel cable strung along posts." Id. at 593. The plaintiff argued the defendant city created "an artificial hazard" by erecting the cable on its pistol range, which was located in a rural area and, as such, the city was not entitled to immunity under the LLA. Id. at 596. We disagreed noting the cable "was directly related to the city's use of the range area." Id. at 596-97. Further, we distinguished the facts from those in Krevics, concluding the record in Lauber was devoid of any evidence "from which it could be inferred that the cable, if hazardous, was erected 'willfully or maliciously' in order to bar access to or use of the adjoining hills." Id. at 597-98.

Applying the definitions suggested by the court in Krevics to the present matter, we discern no basis in the record to conclude defendants acted maliciously or willfully in failing to lower the cable on their commercial property when plaintiff did not have defendants' express consent to operate his dirt bike on their property. At most, plaintiff presents circumstantial evidence

that defendants were aware dirt bike riders utilized other areas of the quarry for years. That evidence, however, falls far short of the necessary showing of "the willful or malicious creation of a hazardous condition" required under N.J.S.A. 39:3C-18. Unlike the scenario in <u>Krevics</u>, where a cable deliberately was placed across a motorbike path, and similar to the facts in <u>Lauber</u>, where the cable had a legitimate business purpose, here, the cable was erected to serve the quarry's business function.

Notably, plaintiff does not assert defendants acted maliciously. He argues instead: "An employee leaving the cable three feet in the air is willful and wanton misconduct due to the decades-long knowledge of how non-employees rode ATVs throughout the property but nonetheless created a hazardous condition on their property."

However, N.J.S.A. 39:3C-18 negates immunity for "willful or malicious creation of a hazardous condition"; not "willful and wanton misconduct." The same distinction is expressed in N.J.S.A. 2A:42A-4. The dictionary defines the terms, in pertinent part, as follows: "wanton"[3] means "manifesting extreme indifference to a risk of injury to another that is known or should have been

---

[3] <u>Wanton</u>, <u>Merriam-Webster</u>, https://www.merriam-webster.com/dictionary/wanton (last visited May 15, 2024).

known"; "willful"[4] means "done deliberately or knowingly and often in conscious violation or disregard of the law, duty, or the rights of others."

Although the Legislature did not include the term, "wanton," in either statutory scheme, our state's case law discerns little difference between "wanton" and "willful" conduct. These terms often are considered together and connote an unlawful intent. "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." G.S. v. Dep't of Human Servs., Div. of Youth & Fam. Servs., 157 N.J. 161, 178 (1999) (citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)).

With these principles in view, we conclude the term, "willful" as set forth in N.J.S.A. 39:3C-18(c), and applied to the circumstances of this case, means the knowing creation of a hazard to a dirt bike rider and not simply the knowing creation of hazard, in general. We agree with the motion judge that defendants utilized the cable for a legitimate business purpose – not to deter the presence of dirt bike riders on their property. We therefore discern no basis to disturb the judge's summary judgment dismissal of plaintiff's complaint.

---

[4] Willful, Merriam-Webster, https://www.merriam-webster.com/dictionary/willful (last visited May 15, 2024).

B.

Little need be said about plaintiff's challenge to the judge's denial of his motion for leave to amend the complaint. The decision to allow or deny amended claims is a fact-sensitive one and is subject to the trial court's sound discretion. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. Given our conclusion that summary judgment was warranted under N.J.S.A. 39:3C-18, granting the amendment would have been futile.

Any contentions not specifically addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2371-22